No. 24-30489

# In the United States Court of Appeals for the Fifth Circuit

STATE OF LOUISIANA; STATE OF TEXAS; STATE OF MISSISSIPPI; STATE OF ALABAMA; STATE OF ALASKA; STATE OF ARKANSAS; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF KANSAS; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF UTAH; STATE OF WEST VIRGINIA; STATE OF WYOMING,

*Plaintiffs-Appellees*,

v.

JOSEPH R. BIDEN, JR.; UNITED STATES DEPARTMENT OF ENERGY; JENNIFER GRANHOLM; DAVID M. TURK; GERI RICHMOND; BRAD CRABTREE; AMY SWEENEY,

*Defendants-Appellants.*

Appeal from the U.S. District Court for the
Western District of Louisiana, No. 2:24-cv-406 (Hon. James D. Cain)

## RECORD EXCERPTS

TODD KIM
*Assistant Attorney General*

JUSTIN D. HEMINGER
ARIELLE MOURRAIN JEFFRIES
   *Attorneys, Appellate Section*
   *Environment and Natural*
   *Resources Division*
   *U.S. Department of Justice*
   *Post Office Box 7415*
   *Washington, D.C. 20044*
   *(202) 532-3140*

TABLE OF CONTENTS

**Tab**                                                                                    **ROA**

1.      Docket Sheet ........................................................................ ROA.1

2.      Notice of Appeal ............................................................. ROA.1435

3.      Order Granting Preliminary Injunction ....................... ROA.1425

4.      Memorandum Ruling ...................................................... ROA.1363

5.      Certificate of Service

# Tab 1

APPEAL

Jump to Docket Table

# U.S. District Court
## Western District of Louisiana (Lake Charles)
## CIVIL DOCKET FOR CASE #: 2:24-cv-00406-JDC-TPL
## Internal Use Only

Louisiana et al v. Biden et al
Assigned to: Judge James D Cain, Jr
Referred to: Magistrate Judge Thomas P LeBlanc
 Related Case: 2:24-cv-00646-JDC-TPL
 Case in other court:  5CCA, 24-30489
Cause: 05:702 Administrative Procedure Act

Date Filed: 03/21/2024
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**State of Louisiana**                    represented by    **Autumn Hamit Patterson**
Law Office of Autumn Hamit Patterson
P O Box 861395
Plano, TX 75086
972-849-3352
Email: ahamitpatterson@outlook.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Joseph Shapiro**
Consovoy McCarthy
222 S Main St 5th Fl
Salt Lake City, UT 84101
703-243-9423
Email: daniel@consovoymccarthy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler R Green**
Consovoy McCarthy
222 S Main St 5th Fl
Salt Lake City, UT 84101
703-243-9423
Email: tyler@consovoymccarthy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Elizabeth Brungard**
LA Atty General's Office (BR)
1885 N Third St
Baton Rouge, LA 70802
225-999-6864
Email: brungardm@ag.louisiana.gov
*ATTORNEY TO BE NOTICED*

24-30489.1

**Plaintiff**

**State of Texas**        represented by   **Morgan Elizabeth Brungard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Mississippi**     represented by   **Justin L Matheny**
Attorney General of MS
550 High St Ste 1200
Jackson, MS 39201
601-359-3680
Fax: 601-359-2003
Email: justin.matheny@ago.ms.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Elizabeth Brungard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Alabama**      represented by   **Edmund G LaCour , Jr**
Attorney General of AL
501 Washington Ave
Montgomery, AL 36130
334-353-2196
Email: edmund.lacour@AlabamaAG.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Elizabeth Brungard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Alaska**        represented by   **Mary Hunter Gramling**
Alaska Dept of Law
P O Box 110300
Juneau, AK 99811-0300
907-465-3600
Fax: 907-465-2417
Email: Mary.gramling@alaska.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Elizabeth Brungard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Arkansas**                                    represented by  **Dylan L Jacobs**
                                                                         Attorney General of AR
                                                                         323 Center St Ste 200
                                                                         Little Rock, AR 72201
                                                                         501-682-3661
                                                                         Fax: 501-682-7395
                                                                         Email: Dylan.jacobs@arkansasag.gov
                                                                         *PRO HAC VICE*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Nicholas Jacob Bronni**
                                                                         Attorney General of AR
                                                                         323 Center St Ste 200
                                                                         Little Rock, AR 72201
                                                                         501-682-6302
                                                                         Fax: 501-682-7395
                                                                         Email: Nicholas.bronni@arkansasag.gov
                                                                         *PRO HAC VICE*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Morgan Elizabeth Brungard**
                                                                         (See above for address)
                                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Florida**                                     represented by  **Natalie Paige Christmas**
                                                                         Attorney General of FL (Tallahasse)
                                                                         PL 01 The Capitol
                                                                         Tallahasse, FL 32399
                                                                         850-414-3300
                                                                         Fax: 850-410-2672
                                                                         Email: natalie.christmas@myfloridalegal.com
                                                                         *PRO HAC VICE*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Morgan Elizabeth Brungard**
                                                                         (See above for address)
                                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Georgia**                                     represented by  **Stephen John Petrany**
                                                                         Attorney General of GA
                                                                         40 Capitol Square S W
                                                                         Atlanta, GA 30334-1300
                                                                         404-458-3408
                                                                         Email: spetrany@law.ga.gov
                                                                         *PRO HAC VICE*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **Morgan Elizabeth Brungard**
                                                                         (See above for address)
                                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Kansas**                    represented by  **Erin Gaide**
                                                        Attorney General of KS
                                                        120 SW 10th Ave 2nd Fl
                                                        Topeka, KS 66612
                                                        785-296-7109
                                                        Email: erin.gaide@ag.ks.gov
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Morgan Elizabeth Brungard**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Montana**                   represented by  **Morgan Elizabeth Brungard**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Nebraska**                  represented by  **Grant D Strobl**
                                                        Attorney General of NE
                                                        2115 State Capitol
                                                        Lincoln, NE 68509
                                                        402-471-2683
                                                        Email: grant.strobl@nebraska.gov
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Morgan Elizabeth Brungard**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Oklahoma**                  represented by  **Morgan Elizabeth Brungard**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of South Carolina**            represented by  **Joseph D Spate**
                                                        Attorney General of SC
                                                        1000 Assembly St
                                                        Columbia, SC 29201
                                                        803-734-3371
                                                        Fax: 803-734-3677
                                                        Email: josephspate@scag.gov
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Morgan Elizabeth Brungard**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Utah**                    represented by   **Stanford Purser**
                                                      Attorney General of UT
                                                      160 E 300 S 5th Fl
                                                      Salt Lake City, UT 84111
                                                      385-382-4334
                                                      Email: spurser@agutah.gov
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Morgan Elizabeth Brungard**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of West Virginia**           represented by   **Michael R Williams**
                                                      Attorney General of WV
                                                      1900 Kanawha Blvd E Bldg 1 Rm 26E
                                                      Charleston, WV 25305
                                                      304-558-2021
                                                      Fax: 304-558-0140
                                                      Email: michael.r.williams@wvago.gov
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Morgan Elizabeth Brungard**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Wyoming**                 represented by   **D David DeWald**
                                                      Attorney General of WY
                                                      109 State Capitol
                                                      Cheyenne, WY 82009
                                                      307-777-6946
                                                      Email: david.dewald@wyo.gov
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Morgan Elizabeth Brungard**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Joseph R Biden, Jr**                     represented by  **Jeffrey Scott Thomas**
U S Dept of Justice
150 M St N E
Washington, DC 20002
202-353-5731
Email: jeffrey.thomas2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katharine Laubach**
U S Dept of Justice
150 M St N E
Washington, DC 20002
202-305-8568
Email: katharine.laubach@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Maggie Claire Woodward**
U S Dept of Justice Env & Natural Resources
(7611)
P O Box 7611
Washington, DC 20044
202-305-4224
Email: maggie.woodward@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Thomas Snodgrass**
U S Dept of Justice
999 18th St Ste 370
Denver, CO 80202
303-844-7233
Email: thomas.snodgrass@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**U S Dept of Energy**                     represented by  **Jeffrey Scott Thomas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katharine Laubach**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maggie Claire Woodward**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Snodgrass**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jennifer Granholm**                       represented by    **Jeffrey Scott Thomas**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Katharine Laubach**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Maggie Claire Woodward**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Thomas Snodgrass**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**David M Turk**                            represented by    **Jeffrey Scott Thomas**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Katharine Laubach**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Maggie Claire Woodward**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Thomas Snodgrass**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Geri Richmond**                           represented by    **Jeffrey Scott Thomas**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Katharine Laubach**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Maggie Claire Woodward**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Thomas Snodgrass**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Brad Crabtree**                              represented by **Jeffrey Scott Thomas**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **Katharine Laubach**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Maggie Claire Woodward**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Thomas Snodgrass**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Amy Sweeney**                                represented by **Jeffrey Scott Thomas**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **Katharine Laubach**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Maggie Claire Woodward**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Thomas Snodgrass**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Amicus**

**Center for L N G**                           represented by **Benjamin Eric Gonsoulin**
                                               Baker Botts (HOU)
                                               910 Louisiana St 37th Fl
                                               Houston, TX 77002-4995
                                               713-229-1510
                                               Fax: 713-229-7810
                                               Email: ben.gonsoulin@bakerbotts.com
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **Emil J Barth**
                                               Baker Botts (DC)
                                               700 K St NW Ste 9th Fl
                                               Washington, DC 20001

9897647700
Fax: 2026397890
Email: emil.barth@bakerbotts.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**George Harold Fibbe**
Baker Botts (HOU)
910 Louisiana St 37th Fl
Houston, TX 77002-4995
713-229-1262
Email: george.fibbe@bakerbotts.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Petroleum Institute**          represented by     **James A Holmes**
Christovich & Kearney (NO)
601 Poydras St Ste 2300
New Orleans, LA 70130
504-561-5700
Fax: 504-561-5743
Email: jaholmes@christovich.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John S Moran**
McGuire Woods (DC)
888 16th St N W Ste 500
Washington, DC 20006
202-525-0356
Email: jmoran@mcguirewoods.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Email to Active Attorneys' Primary Addresses
Email to All Attorneys' Primary Addresses
Email to Casewide NEF Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 03/21/2024 | 1 (p.25) | COMPLAINT against All Defendants (Filing fee $405, receipt number ALAWDC-5892675) filed by State of Nebraska, State of Florida, State of Texas, State of Louisiana, State of Wyoming, State of South Carolina, State of Arkansas, State of Mississippi, State of Kansas, State of Oklahoma, State of Utah, State of West Virginia, State of Georgia, State of Alabama, State of Montana, State of Alaska. (Attachments: # 1 (p.25) Civil cover sheet)(Attorney Morgan Elizabeth Brungard added to party State of Alabama(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Alaska(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Arkansas(pty:pla), |

| | | |
|---|---|---|
| | | Attorney Morgan Elizabeth Brungard added to party State of Florida(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Georgia(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Kansas(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Louisiana(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Mississippi(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Montana(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Nebraska(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Oklahoma(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of South Carolina(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Texas(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Utah(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of West Virginia(pty:pla), Attorney Morgan Elizabeth Brungard added to party State of Wyoming(pty:pla))(aty,Brungard, Morgan) (Attachment 1 replaced on 3/21/2024) (Chavis, J). (Entered: 03/21/2024), QC'ed on 03/22/2024, by Chavis , J) |
| 03/21/2024 | | CASE Assigned to Judge James D Cain, Jr and Magistrate Judge Thomas P LeBlanc. (crt,Chavis, J) (Entered: 03/22/2024) |
| 03/21/2024 | 2 (p.99) | SUMMONS ISSUED as to Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk. (crt,Chavis, J) (Entered: 03/22/2024) |
| 03/22/2024 | 3 (p.113) | SUMMONS ISSUED as to U S Attorney, U S Attorney General. (crt,Chavis, J) (Entered: 03/22/2024) |
| 03/25/2024 | 4 (p.117) | MOTION for Autumn Hamit Patterson to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5895452) by State of Louisiana. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 3/25/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 03/25/2024), QC'ed on 03/25/2024, by Chavis , J) |
| 03/26/2024 | 5 (p.122) | MOTION for Edmund G. LaCour, Jr. to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5896826) by State of Alabama. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 3/26/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 03/26/2024), QC'ed on 03/26/2024, by Chavis , J) |
| 03/26/2024 | 6 (p.127) | MOTION for Daniel Shapiro to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5896964) by State of Louisiana. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 3/26/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: |

| | | |
|---|---|---|
| | | 03/26/2024), *(QC'ed on 03/26/2024, by Chavis , J)* |
| 03/26/2024 | 7 (p.132) | MOTION for Tyler Green to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5897022) by State of Louisiana. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 3/26/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 03/26/2024), *(QC'ed on 03/26/2024, by Chavis , J)* |
| 03/27/2024 | 8 (p.137) | MOTION for Grant Strobl to Appear Pro Hac Vice (Admission fee: $105, receipt number BLAWDC-5898419) by State of Nebraska. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 3/27/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 03/27/2024), *(QC'ed on 03/27/2024, by Chavis , J)* |
| 03/27/2024 | 9 (p.142) | MOTION for Erin B. Gaide to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5898454) by State of Kansas. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 3/27/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 03/27/2024), *(QC'ed on 03/27/2024, by Chavis , J)* |
| 03/28/2024 | 10 (p.147) | MOTION for Stanford Purser to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5899160) by State of Utah. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 3/28/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 03/28/2024), *(QC'ed on 04/01/2024, by Chavis , J)* |
| 03/28/2024 | 11 (p.152) | MOTION for Stephen J. Petrany to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5899677) by State of Georgia. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 3/28/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 03/28/2024), *(QC'ed on 04/01/2024, by Chavis , J)* |
| 03/28/2024 | 12 (p.157) | NOTICE of Appearance by Jeffrey Scott Thomas on behalf of Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk (Attorney Jeffrey Scott Thomas added to party Joseph R Biden, Jr(pty:dft), Attorney Jeffrey Scott Thomas added to party Brad Crabtree(pty:dft), Attorney Jeffrey Scott Thomas added to party U S Dept of Energy(pty:dft), Attorney Jeffrey Scott Thomas added to party Jennifer Granholm(pty:dft), Attorney Jeffrey Scott Thomas added to party Geri Richmond(pty:dft), Attorney Jeffrey Scott Thomas added to party Amy Sweeney(pty:dft), Attorney Jeffrey Scott Thomas added to party David M Turk(pty:dft)) (aty,Thomas, Jeffrey) (Entered: 03/28/2024), *(QC'ed on 04/01/2024, by Chavis , J)* |

| | | |
|---|---|---|
| 03/28/2024 | 13 (p.160) | MOTION to Stay , MOTION for Preliminary Injunction (Motion Ripe Deadline set for 3/28/2024.) by All Plaintiffs. Motions referred to Thomas P LeBlanc. (Attachments: # 1 (p.25) Memorandum in Support, # 2 (p.99) Proposed order, # 3 (p.113) Exhibits Table of Contents, # 4 (p.117) Exhibit 1, # 5 (p.122) Exhibit 2, # 6 (p.127) Exhibit 3, # 7 (p.132) Exhibit 4, # 8 (p.137) Exhibit 5, # 9 (p.142) Exhibit 6, # 10 (p.147) Exhibit 7, # 11 (p.152) Exhibit 8, # 12 (p.157) Exhibit 9, # 13 (p.160) Exhibit 10, # 14 Exhibit 11, # 15 (p.745) Exhibit 12, # 16 (p.750) Exhibit 13, # 17 (p.755) Exhibit 14, # 18 (p.760) Exhibit 15, # 19 (p.765) Exhibit 16, # 20 (p.770) Exhibit 17, # 21 (p.775) Exhibit 18, # 22 (p.776) Exhibit 20, # 23 (p.777) Exhibit 21, # 24 (p.778) Exhibit 22, # 25 (p.779) Exhibit 23, # 26 (p.780) Exhibit 24, # 27 (p.781) Exhibit 25, # 28 (p.782) Exhibit 26, # 29 (p.783) Exhibit 27, # 30 (p.786) Exhibit 28, # 31 (p.797) Exhibit 29, # 32 (p.808) Exhibit 30, # 33 (p.810) Exhibit 31, # 34 (p.812) Exhibit 32, # 35 (p.817) Exhibit 33, # 36 (p.822) Exhibit 34, # 37 (p.843) Exhibit 35, # 38 (p.846) Exhibit 36, # 39 (p.847) Exhibit 37, # 40 (p.848) Exhibit 38, # 41 (p.849) Exhibit 39, # 42 (p.850) Exhibit 40, # 43 (p.859) Exhibit 41, # 44 (p.864) Exhibit 42, # 45 (p.867) Exhibit 43, # 46 (p.870) Exhibit 44, # 47 (p.875) Exhibit 45, # 48 (p.876) Exhibit 46, # 49 (p.892) Exhibit 47, # 50 (p.893) Exhibit 48, # 51 (p.894) Exhibit 49, # 52 (p.895) Exhibit 50, # 53 (p.896) Exhibit 51, # 54 (p.920) Exhibit 52)(aty,Brungard, Morgan) (Entered: 03/28/2024, (QC'ed on 04/01/2024, by Chavis , J) |
| 04/01/2024 | 14 | ELECTRONIC ORDER re 13 (p.160) MOTION to Stay MOTION for Preliminary Injunction filed by State of Texas, State of Mississippi, State of Utah, State of Georgia, State of Kansas, State of Alabama, State of Oklahoma, State of Alaska, State of Louisiana, State of Montana, State of Florida, State of Arkansas, State of Nebraska, State of Wyoming, State of South Carolina, State of West Virginia, A District Judge Hearing is SET for 6/20/2024 01:30 PM in Lake Charles, Courtroom 4 before Judge James D Cain Jr.; Set Deadlines as to 13 (p.160) MOTION to Stay MOTION for Preliminary Injunction :( Responses due by 4/18/2024, Replies due by 4/25/2024.). Signed by Judge James D Cain, Jr on 4/1/2024. (crt,Petrofes, T) (Entered: 04/01/2024), (QC'ed on 04/01/2024, by Stewart , T) |
| 04/04/2024 | 15 (p.745) | MOTION for Justin Matheny to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5905379) by State of Mississippi. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/4/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 04/04/2024), (QC'ed on 04/04/2024, by Chavis , J) |
| 04/04/2024 | 16 (p.750) | MOTION for D. David DeWald to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5905754) by State of Wyoming. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/4/2024. |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 04/04/2024), (QC'ed on 04/05/2024, by Chavis , J) |
| 04/05/2024 | 17 (p.755) | MOTION for Mary Hunter Gramling to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5907146) by State of Alaska. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/5/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 04/05/2024), (QC'ed on 04/08/2024, by Chavis , J) |
| 04/05/2024 | 18 (p.760) | MOTION for Natalie Christmas to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5907180) by State of Florida. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/5/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 04/05/2024), (QC'ed on 04/08/2024, by Chavis , J) |
| 04/05/2024 | 21 (p.775) | ORDER granting 4 (p.117) Motion to Appear Pro Hac Vice for appearance of Autmn Hamit Patterson for State of Louisiana. Signed by Magistrate Judge Thomas P LeBlanc on 4/5/2024. (crt,Chavis, J) (Entered: 04/08/2024) |
| 04/06/2024 | 22 (p.776) | ORDER granting 5 (p.122) Motion to Appear Pro Hac Vice for appearance of Edmund G LaCour, Jr for State of Alabama. Signed by Magistrate Judge Thomas P LeBlanc on 4/6/2024. (crt,Chavis, J) (Entered: 04/08/2024) |
| 04/06/2024 | 23 (p.777) | ORDER granting 6 (p.127) Motion to Appear Pro Hac Vice for appearance of Daniel Joseph Shapiro for State of Louisiana. Signed by Magistrate Judge Thomas P LeBlanc on 4/6/2024. (crt,Chavis, J) (Entered: 04/08/2024) |
| 04/06/2024 | 24 (p.778) | ORDER granting 7 (p.132) Motion to Appear Pro Hac Vice for appearance of Tyler R Green for State of Louisiana. Signed by Magistrate Judge Thomas P LeBlanc on 4/6/2024. (crt,Chavis, J) (Entered: 04/08/2024) |
| 04/06/2024 | 25 (p.779) | ORDER granting 8 (p.137) Motion to Appear Pro Hac Vice for appearance of Grant D Strobl for State of Nebraska. Signed by Magistrate Judge Thomas P LeBlanc on 4/6/2024. (crt,Chavis, J) (Entered: 04/08/2024) |
| 04/06/2024 | 26 (p.780) | ORDER granting 9 (p.142) Motion to Appear Pro Hac Vice for appearance of Erin Gaide for State of Kansas. Signed by Magistrate Judge Thomas P LeBlanc on 4/6/2024. (crt,Chavis, J) (Entered: 04/08/2024) |
| 04/08/2024 | 19 (p.765) | MOTION for Dylan L. Jacobs to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5908110) by State of Arkansas. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/8/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) Modified on 4/19/2024 to |

| | | |
|---|---|---|
| | | indicate 44 (p.864) Corrected Motion submitted (Miletello, A). (Entered: 04/08/2024), (QC'ed on 04/09/2024, by Chavis , J) |
| 04/08/2024 | 20 (p.770) | MOTION for Nicholas J. Bronni to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5908126) by State of Arkansas. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/8/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) Modified on 4/19/2024 to indicate 45 (p.867) Corrected Motion submitted (Miletello, A). (Entered: 04/08/2024), (QC'ed on 04/09/2024, by Chavis , J) |
| 04/08/2024 | 27 (p.781) | ORDER granting 10 (p.147) Motion to Appear Pro Hac Vice for appearance of Stanford Purser for State of Utah. Signed by Magistrate Judge Thomas P LeBlanc on 4/8/2024. (crt,Chavis, J) (Entered: 04/09/2024) |
| 04/08/2024 | 28 (p.782) | ORDER granting 11 (p.152) Motion to Appear Pro Hac Vice for appearance of Stephen John Petrany for State of Georgia. Signed by Magistrate Judge Thomas P LeBlanc on 4/8/2024. (crt,Chavis, J) (Entered: 04/09/2024) |
| 04/10/2024 | 29 (p.783) | NOTICE of Appearance by Katharine Laubach on behalf of Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk (Attorney Katharine Laubach added to party Joseph R Biden, Jr(pty:dft), Attorney Katharine Laubach added to party Brad Crabtree(pty:dft), Attorney Katharine Laubach added to party U S Dept of Energy(pty:dft), Attorney Katharine Laubach added to party Jennifer Granholm(pty:dft), Attorney Katharine Laubach added to party Geri Richmond(pty:dft), Attorney Katharine Laubach added to party Amy Sweeney(pty:dft), Attorney Katharine Laubach added to party David M Turk(pty:dft)) (aty,Laubach, Katharine) (Entered: 04/10/2024), (QC'ed on 04/10/2024, by Chavis , J) |
| 04/12/2024 | 30 (p.786) | MOTION to Extend Time to Respond re 13 (p.160) Motion to Stay, MOTION to Set Briefing Schedule and MOTION for Leave to Enlarge Page Limits by All Plaintiffs. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/12/2024. (Attachments: # 1 (p.25) Proposed order)(aty,Patterson, Autumn) Modified on 4/15/2024 (Whitener, M). Added MOTION for Hearing, MOTION for Leave to File Excess Pages, and modified docket entry relationship on 4/15/2024 (Whitener, M). (Entered: 04/12/2024), (QC'ed on 04/15/2024, by Whitener , M) |
| 04/12/2024 | 31 (p.797) | SUMMONS Returned UnExecuted by State of Louisiana All Defendants. (Attachments: # 1 (p.25) Brad Crabtree return, # 2 (p.99) Jennifer Granholm return, # 3 (p.113) Geri Richmond return, # 4 (p.117) Amy Sweeney return, # 5 (p.122) U.S. Department of Energy return, # 6 (p.127) David |

| | | |
|---|---|---|
| | | Turk return, # 7 (p.132) U.S. Attorney for the Western District of Louisiana return, # 8 (p.137) U.S. Attorney General return)(aty,Patterson, Autumn) Modified docket text on 4/15/2024 (Chavis, J). (Entered: 04/12/2024), (QC'ed on 04/15/2024, by Chavis , J) |
| 04/12/2024 | | (Court only) ***Motions terminated: 30 (p.786) MOTION to Extend Time to Respond, Set Briefing Schedule and Enlarge Page Limits filed by State of Texas, State of Mississippi, State of Utah, State of Georgia, State of Kansas, State of Alabama, State of Oklahoma, State of Alaska, State of Louisiana, State of Montana, State of Florida, State of Arkansas, State of Nebraska, State of Wyoming, State of South Carolina, State of West Virginia. Reason for termination: Motion ripe deadline terminated. Incorrect motion relief selected. (crt,Whitener, M) (Entered: 04/15/2024) |
| 04/12/2024 | | Set/Reset Deadlines as to 30 (p.786) Motion to Extend Time to Respond MOTION to Set Briefing Schedule MOTION for Leave to Enlarge Page Limits.(Motion Ripe Deadline set for 4/12/2024.), Motions Transferred regarding 30 (p.786) Motion to Extend Time to Respond MOTION to Set Briefing Schedule MOTION for Leave to Enlarge Page Limits. Motions referred to Judge James D Cain, Jr. (crt,Whitener, M) (Entered: 04/15/2024) |
| 04/12/2024 | | NOTICE of Corrective Action to Autumn Hamit Patterson on behalf of State of Louisiana regarding 31 (p.797) Summons Returned Executed as to USA; Action taken: service of the complaint on the USA defendant is not complete; therefore answer deadline has been terminated and service executed date removed. (crt,Chavis, J) (Entered: 04/15/2024) |
| 04/15/2024 | | (Court only) *** Answer deadline terminated as complaint has not been properly served. (crt,Chavis, J) (Entered: 04/15/2024) |
| 04/15/2024 | 32 (p.808) | ORDER granting 30 (p.786) Motion for Hearing; granting 30 (p.786) Motion for Leave to File Excess Pages. Signed by Judge James D Cain, Jr on 4/15/2024. (crt,Chavis, J) (Entered: 04/15/2024) |
| 04/15/2024 | | (Court only) ***Set ATTENTION Flag. See Doc 30 (p.786) Order granting Leave to File Excess Pages (crt,Chavis, J) (Entered: 04/15/2024) |
| 04/15/2024 | 38 (p.846) | ORDER granting 15 (p.745) Motion to Appear Pro Hac Vice for appearance of Justin L Matheny for State of Mississippi. Signed by Magistrate Judge Thomas P LeBlanc on 4/15/2024. (crt,Chavis, J) (Entered: 04/17/2024) |
| 04/15/2024 | 39 (p.847) | ORDER granting 16 (p.750) Motion to Appear Pro Hac Vice for appearance of D David Deald for State of Wyoming. Signed by Magistrate Judge Thomas P LeBlanc on |

| | | |
|---|---|---|
| | | 4/15/2024. (crt,Chavis, J) (Entered: 04/17/2024) |
| 04/15/2024 | 40 (p.848) | ORDER granting 17 (p.755) Motion to Appear Pro Hac Vice for appearance of Mary Hunter Gramling for State of Alaska. Signed by Magistrate Judge Thomas P LeBlanc on 4/15/2024. (crt,Chavis, J) (Entered: 04/17/2024) |
| 04/15/2024 | 41 (p.849) | ORDER granting 18 (p.760) Motion to Appear Pro Hac Vice for appearance of Natalie Paige Christmas for State of Florida. Signed by Magistrate Judge Thomas P LeBlanc on 4/15/2024. (crt,Chavis, J) (Entered: 04/17/2024) |
| 04/16/2024 | 33 (p.810) | NOTICE of Appearance by Benjamin Eric Gonsoulin on behalf of Center for LNG (Attorney Benjamin Eric Gonsoulin added to party Center for LNG(pty:am)) (aty,Gonsoulin, Benjamin) (Entered: 04/16/2024), (QC'ed on 04/17/2024, by Chavis , J) |
| 04/16/2024 | 34 (p.812) | MOTION for George Fibbe to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5917424) by Center for LNG. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/16/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Gonsoulin, Benjamin) (Entered: 04/16/2024), (QC'ed on 04/17/2024, by Chavis , J) |
| 04/16/2024 | 35 (p.817) | MOTION for Emil J. Barth to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5917425) by Center for LNG. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/16/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Gonsoulin, Benjamin) (Entered: 04/16/2024), (QC'ed on 04/17/2024, by Chavis , J) |
| 04/16/2024 | 36 (p.822) | MOTION for Leave to File as Amicus Curiae with consent sought but not yet obtained by Center for LNG. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/16/2024. (Attachments: # 1 (p.25) Proposed pleading Amicus Brief of the Center for LNG, # 2 (p.99) Proposed order)(aty,Gonsoulin, Benjamin) (Entered: 04/16/2024), (QC'ed on 04/17/2024, by Chavis , J) |
| 04/16/2024 | 37 (p.843) | CORPORATE DISCLOSURE STATEMENT by Center for LNG identifying Other Affiliate Natural Gas Supply Association for Center for LNG. (aty,Gonsoulin, Benjamin) (Entered: 04/16/2024), (QC'ed on 04/17/2024, by Chavis , J) |
| 04/17/2024 | | Motions Transferred regarding 36 (p.822) MOTION for Leave to File as Amicus Curiae with consent sought but not yet obtained . Motions referred to Judge James D Cain, Jr. (crt,Chavis, J) (Entered: 04/17/2024) |
| 04/17/2024 | 42 (p.850) | SUMMONS Returned Executed by State of Louisiana. Joseph R Biden Jr served on 4/01/2024, answer due 5/31/2024. Brad Crabtree served on 3/25/2024, answer due 5/24/2024. US Dept of Energy served on 3/25/2024, answer |

| | | |
|---|---|---|
| | | due 5/24/2024. Jennifer Granholm served on 3/25/2024, answer due 5/24/2024. Geri Richmond served on 3/25/2024, answer due 5/24/2024. Amy Sweeney served on 3/25/2024, answer due 5/24/2024. David M Turk served on 3/25/2024, answer due 5/24/2024. (aty,Patterson, Autumn) Modified to correct service and answer deadlines as an erroneous service date was entered at the time of e- filing on 4/17/2024 (Chavis, J). (Entered: 04/17/2024), QC'ed on 04/17/2024, by Chavis , J) |
| 04/17/2024 | 43 (p.859) | MOTION for Joseph D. Spate to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5918669) by State of South Carolina. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/17/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 04/17/2024), QC'ed on 04/18/2024, by Chavis , J) |
| 04/17/2024 | | (Court only) ***Set/Reset Answer Due: Brad Crabtree answer due 5/24/2024; U S Dept of Energy answer due 5/24/2024; Jennifer Granholm answer due 5/24/2024; Geri Richmond answer due 5/24/2024; Amy Sweeney answer due 5/24/2024; David M Turk answer due 5/24/2024. Answer deadline modified as erroneous service date was entered at the time of e-filing (crt,Chavis, J) (Entered: 04/18/2024) |
| 04/17/2024 | | NOTICE of Corrective Action to Autumn Hamit Patterson on behalf of State of Louisiana regarding 42 (p.850) Summons Returned Executed as to USA. Action taken: docket text modified to reflect correct service dates 04/01/2024 and 03/25/2024, answer due dates 05/31/2024 and 05/24/2024 as an incorrect service date was entered at the time of e-filing. (crt,Chavis, J) (Entered: 04/18/2024) |
| 04/17/2024 | 47 (p.875) | ORDER granting 36 (p.822) Motion for Leave to File. Signed by Judge James D Cain, Jr on 4/17/2024. (crt,Chavis, J) (Entered: 04/18/2024) |
| 04/17/2024 | 48 (p.876) | AMICUS BRIEF re 13 (p.160) MOTION to Stay MOTION for Preliminary Injunction filed by Center for L N G. (crt,Chavis, J) (Entered: 04/18/2024) |
| 04/18/2024 | 44 (p.864) | CORRECTIVE DOCUMENT entitled Motion to Appear Pro Hac Vice filed by State of Arkansas regarding 19 (p.765) MOTION for Dylan L. Jacobs to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5908110) . (aty,Brungard, Morgan) (Entered: 04/18/2024), QC'ed on 04/19/2024, by Miletello , A) |
| 04/18/2024 | 45 (p.867) | CORRECTIVE DOCUMENT entitled Motion to Appear Pro Hac Vice filed by State of Arkansas regarding 20 (p.770) MOTION for Nicholas J. Bronni to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5908126) . (aty,Brungard, Morgan) (Entered: 04/18/2024), QC'ed on 04/19/2024, by Miletello , A) |

| 04/18/2024 | 46 (p.870) | MOTION for Michael R. Williams to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5919321) by State of West Virginia. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/18/2024. (Attachments: # 1 (p.25) Certificate of good standing, # 2 (p.99) Proposed order)(aty,Brungard, Morgan) (Entered: 04/18/2024), (QC'ed on 04/19/2024, by Miletello , A) |
| --- | --- | --- |
| 04/18/2024 | 49 (p.892) | ORDER granting 34 (p.812) Motion to Appear Pro Hac Vice for appearance of George Fibbe for Center for L N G. Signed by Magistrate Judge Thomas P LeBlanc on 4/18/2024. (crt,Chavis, J) (Entered: 04/19/2024) |
| 04/18/2024 | 50 (p.893) | ORDER granting 35 (p.817) Motion to Appear Pro Hac Vice for appearance of Emil J Barth for Center for L N G. Signed by Magistrate Judge Thomas P LeBlanc on 4/18/2024. (crt,Chavis, J) (Entered: 04/19/2024) |
| 04/25/2024 | 51 (p.894) | ORDER granting 43 (p.859) Motion to Appear Pro Hac Vice for appearance of Joseph D Spate for State of South Carolina. Signed by Magistrate Judge Thomas P LeBlanc on 4/25/2024. (crt,Chavis, J) (Entered: 04/25/2024) |
| 04/26/2024 | 52 (p.895) | ORDER granting 46 (p.870) Motion to Appear Pro Hac Vice for appearance of Michael R Williams for State of West Virginia. Signed by Magistrate Judge Thomas P LeBlanc on 4/26/2024. (crt,Chavis, J) (Entered: 04/30/2024) |
| 04/30/2024 | 53 (p.896) | MOTION for Leave to File Brief of Amicus Curiae with consent sought but not yet obtained by American Petroleum Institute. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/30/2024. (Attachments: # 1 (p.25) Proposed order, # 2 (p.99) Proposed pleading)(Attorney James A Holmes added to party American Petroleum Institute(pty:am))(aty,Holmes, James) (Entered: 04/30/2024), (QC'ed on 04/30/2024, by Chavis , J) |
| 04/30/2024 | 54 (p.920) | MOTION for John S. Moran to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5931315) by American Petroleum Institute. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 4/30/2024. (Attachments: # 1 (p.25) Exhibit Certificate of Good Standing John Moran, # 2 (p.99) Proposed order)(aty,Holmes, James) (Entered: 04/30/2024), (QC'ed on 04/30/2024, by Chavis , J) |
| 05/06/2024 | 55 (p.925) | NOTICE of Appearance by Maggie Claire Woodward on behalf of Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk (Attorney Maggie Claire Woodward added to party Joseph R Biden, Jr(pty:dft), Attorney Maggie Claire Woodward added to party Brad Crabtree(pty:dft), Attorney Maggie Claire Woodward added to party U S Dept of Energy(pty:dft), Attorney Maggie Claire Woodward added to party Jennifer Granholm(pty:dft), Attorney Maggie Claire |

| | | |
|---|---|---|
| | | Woodward added to party Geri Richmond(pty:dft), Attorney Maggie Claire Woodward added to party Amy Sweeney(pty:dft), Attorney Maggie Claire Woodward added to party David M Turk(pty:dft)) (aty,Woodward, Maggie) (Entered: 05/06/2024), (QC'ed on 05/07/2024, by Chavis , J) |
| 05/06/2024 | 56 (p.929) | MOTION to Dismiss for Lack of Jurisdiction , *Response in Opposition to Plaintiffs' Motion for Preliminary Injunction or Stay*, MOTION to Dismiss For Failure to State a Claim by All Defendants. (Attachments: # 1 (p.25) Exhibit A, # 2 (p.99) Exhibit B, # 3 (p.113) Exhibit C, # 4 (p.117) Exhibit D, # 5 (p.122) Exhibit E, # 6 (p.127) Exhibit F)(aty,Thomas, Jeffrey) (Entered: 05/06/2024), (QC'ed on 05/07/2024, by Chavis , J) |
| 05/06/2024 | 56 | MEMORANDUM in Opposition re 13 (p.160) MOTION to Stay MOTION for Preliminary Injunction filed by Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk. ADMINISTRATIVE ENTRY asto properly capture additional relief requested in pleading. (crt,Chavis, J) Modified to add document number on 5/6/2024 (Chavis, J). (Entered: 05/07/2024) |
| 05/06/2024 | 57 (p.1145) | NOTICE of Motion Setting without oral argument regarding: 56 MOTION to Dismiss for Lack of Jurisdiction, MOTION to Dismiss For Failure to State a Claim. Motions referred to Judge James D Cain, Jr. (crt,Chavis, J) (Main Document 57 replaced on 5/9/2024) (Chavis, J). Modified to update notice to match briefing schedule filed as doc 32 (p.808) on 5/9/2024 (Chavis, J). (Entered: 05/07/2024) |
| 05/09/2024 | | (Court only) ***Set ATTENTION Flag. NOTE BRIEFING SCHEDULE FILED AS DOC 32 (p.808) ORDER RELATED TO MOTIONS TO DISMISS/STAY AND RESPONSE DEADLINES (crt,Chavis, J) (Entered: 05/09/2024) |
| 05/15/2024 | 58 (p.1146) | MOTION to set a briefing schedule to respond to amicus brief(s) re 53 (p.896) MOTION for Leave to File Brief of Amicus Curiae with consent sought but not yet obtained , 36 (p.822) MOTION for Leave to File as Amicus Curiae with consent sought but not yet obtained by All Defendants. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 5/15/2024. (Attachments: # 1 (p.25) Proposed order)(aty,Thomas, Jeffrey) (Entered: 05/15/2024), (QC'ed on 05/15/2024, by Chavis , J) |
| 05/15/2024 | | Motions Transferred regarding 53 (p.896) MOTION for Leave to File Brief of Amicus Curiae with consent sought but not yet obtained . Motions referred to Judge James D Cain, Jr. (crt,Chavis, J) (Entered: 05/15/2024) |
| 05/15/2024 | | Motions Transferred regarding 58 (p.1146) MOTION to set a briefing schedule to respond to amicus brief(s) re 53 (p.896) |

| | | |
|---|---|---|
| | | MOTION for Leave to File Brief of Amicus Curiae with consent sought but not yet obtained , 36 (p.822) MOTION for Leave to File as Amicus Curiae with consent sought b. Motions referred to Judge James D Cain, Jr. (crt,Chavis, J) (Entered: 05/15/2024) |
| 05/15/2024 | 59 (p.1152) | ORDER granting 53 (p.896) Motion for Leave to File. Signed by Judge James D Cain, Jr on 5/15/2024. (crt,Chavis, J) (Entered: 05/15/2024) |
| 05/15/2024 | 60 (p.1153) | AMICUS BRIEF in Response to 13 (p.160) MOTION to Stay MOTION for Preliminary Injunction filed by American Petroleum Institute. (crt,Chavis, J) (Entered: 05/15/2024) |
| 05/15/2024 | 61 (p.1172) | ORDER granting 58 (p.1146) Motion to set a Schedule to Respond to Amicus Brief(s). IT IS ORDERED that the Motion is GRANTED; Defendants may file a 7-page response to each of the Center for LNGs amicus brief, and the American Petroleum Institutes amicus brief no later than May 24, 2024 (or a 14-page combined response); Plaintiffs may file replies, if any they have, no later than May 31, 2024, limited to 7 pages each or a 14-page combined reply. Signed by Judge James D Cain, Jr on 5/15/2024. (crt,Stewart, T) (Entered: 05/15/2024) |
| 05/15/2024 | | Set Deadlines: Defendants may file a response to each of the Center for LNGs amicus brief, and the American Petroleum Institutes amicus brief no later than May 24, 2024; Plaintiffs may file replies, if any they have, no later than May 31, 2024. (crt,Stewart, T) (Entered: 05/15/2024) |
| 05/24/2024 | 62 (p.1173) | RESPONSE *TO AMICUS BRIEFS* by Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk re 61 (p.1172) Order on Motion for Miscellaneous Relief,, . (Attachments: # 1 (p.25) Exhibit A)(aty,Thomas, Jeffrey) (Entered: 05/24/2024), (QC'ed on 05/25/2024, by Kiper , C) |
| 05/31/2024 | 63 (p.1193) | MEMORANDUM in Opposition re 56 MOTION to Dismiss for Lack of Jurisdiction *MOTION to Dismiss For Failure to State a Claim* , Reply in Support of Plaintiffs' Motion for Preliminary Injunction or Stay filed by State of Alabama, State of Alaska, State of Arkansas, State of Florida, State of Georgia, State of Kansas, State of Louisiana, State of Mississippi, State of Montana, State of Nebraska, State of Oklahoma, State of South Carolina, State of Texas, State of Utah, State of West Virginia, State of Wyoming. (Attachments: # 1 (p.25) Exhibit Table of Contents, # 2 (p.99) Exhibit 53, # 3 (p.113) Exhibit 54, # 4 (p.117) Exhibit 55, # 5 (p.122) Exhibit 56, # 6 (p.127) Exhibit 57, # 7 (p.132) Exhibit 58, # 8 (p.137) Exhibit 59, # 9 (p.142) Exhibit 60)(aty,Patterson, Autumn) (Entered: 05/31/2024), (QC'ed on 06/03/2024, by Chavis , J) |
| 05/31/2024 | 64 (p.1322) | |

| | | |
|---|---|---|
| | | RESPONSE by State of Alabama, State of Alaska, State of Arkansas, State of Florida, State of Georgia, State of Kansas, State of Louisiana, State of Mississippi, State of Montana, State of Nebraska, State of Oklahoma, State of South Carolina, State of Texas, State of Utah, State of West Virginia, State of Wyoming re 62 (p.1173) Response (NOT Motions), . (aty,Patterson, Autumn) (Entered: 05/31/2024), (QC'ed on 05/31/2024, by Chavis , J) |
| 06/03/2024 | 65 (p.1334) | ORDER granting 19 (p.765) Motion to Appear Pro Hac Vice for appearance of Dylan L Jacobs for State of Arkansas. Signed by Magistrate Judge Thomas P LeBlanc on 6/3/2024. (crt,Chavis, J) (Entered: 06/04/2024) |
| 06/03/2024 | 66 (p.1335) | ORDER granting 20 (p.770) Motion to Appear Pro Hac Vice for appearance of Nicholas Jacob Bronni for State of Arkansas. Signed by Magistrate Judge Thomas P LeBlanc on 6/3/2024. (crt,Chavis, J) (Entered: 06/04/2024) |
| 06/13/2024 | 67 (p.1336) | NOTICE of Appearance by Thomas Snodgrass on behalf of Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk (Attorney Thomas Snodgrass added to party Joseph R Biden, Jr(pty:dft), Attorney Thomas Snodgrass added to party Brad Crabtree(pty:dft), Attorney Thomas Snodgrass added to party U S Dept of Energy(pty:dft), Attorney Thomas Snodgrass added to party Jennifer Granholm(pty:dft), Attorney Thomas Snodgrass added to party Geri Richmond(pty:dft), Attorney Thomas Snodgrass added to party Amy Sweeney(pty:dft), Attorney Thomas Snodgrass added to party David M Turk(pty:dft)) (aty,Snodgrass, Thomas) (Entered: 06/13/2024), (QC'ed on 06/13/2024, by Chavis , J) |
| 06/13/2024 | 68 (p.1339) | REPLY to Response to Motion re 56 MOTION to Dismiss for Lack of Jurisdiction *MOTION to Dismiss For Failure to State a Claim filed by Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk. (aty,Thomas, Jeffrey) (Entered: 06/13/2024), (QC'ed on 06/14/2024, by Chavis , J)* |
| 06/20/2024 | 69 (p.1361) | ORDER granting 54 (p.920) Motion to Appear Pro Hac Vice for appearance of John S Moran for American Petroleum Institute. Signed by Judge James D Cain, Jr on 6/20/2024. (crt,Crick, S) (Entered: 06/20/2024) |
| 06/20/2024 | 70 (p.1362) | MINUTES for proceedings held before Judge James D Cain, Jr: MISCELLANEOUS HEARING held on 6/20/2024 re 13 (p.160) MOTION to Stay, MOTION for Preliminary Injunction by All Plaintiffs. After hearing argument of counsel, the Motion was taken under advisement.. (Court Reporter: DD Juranka) (crt,Stewart, T) (Entered: 06/20/2024) |
| 06/20/2024 | | Motions Transferred regarding 13 (p.160) MOTION to Stay; MOTION for Preliminary Injunction . Motions referred to |

| | | |
|---|---|---|
| | | Judge James D Cain, Jr. (crt,Stewart, T) (Entered: 06/20/2024) |
| 06/30/2024 | 71 (p.1439) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings for Motion Hearing held on 6/20/2024 before Judge James D Cain Jr. Court Reporter/Transcriber DD Juranka, Telephone number (337)214-6669. Total pages: 67. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter. Redaction Request due 7/25/2024. Redacted Transcript Deadline set for 8/5/2024. Release of Transcript Restriction set for 10/3/2024. (crt,Juranka, D) (Entered: 06/30/2024), (QC'ed on 07/19/2024, by Alexander , E) |
| 07/01/2024 | 72 (p.1363) | MEMORANDUM RULING re 13 (p.160) MOTION to Stay MOTION for Preliminary Injunction filed by State of Texas, State of Mississippi, State of Utah, State of Georgia, State of Kansas, State of Alabama, State of Oklahoma, State of Alaska, State of Louisiana, State of Montana, State of Florida, State of Arkansas, State of Nebraska, State of Wyoming, State of South Carolina, State of West Virginia; 56 MOTION to Dismiss for Lack of Jurisdiction *MOTION to Dismiss For Failure to State a Claim filed by Amy Sweeney, David M Turk, Joseph R Biden, Jr, U S Dept of Energy, Geri Richmond, Brad Crabtree, Jennifer Granholm,. Signed by Judge James D Cain, Jr on 7/1/2024. (crt,Stewart, T) (Main Document 72 replaced on 7/1/2024) (Stewart, T). (Entered: 07/01/2024)* |
| 07/01/2024 | 73 (p.1425) | JUDGMENT in accordance with the 72 (p.1363) Memorandum Ruling, IT IS ORDERED, ADJUDGED, AND DECREED that Defendants Motion to Dismiss 56 is GRANTED in part and DENIED in part. The Motion is GRANTED to the extent that Plaintiffs claims, Counts I-IX, XIII, and XIV, against President Joseph R. Biden, Jr. are DISMISSED with prejudice; otherwise, the Motion to Dismiss is DENIED. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff States Motion for Preliminary Injunction is GRANTED. The Court finds that the Plaintiff States are entitled to the Injunctive Relief requested as to the LNG Export Ban. Accordingly, IT IS ORDERED that the Defendants, in their official capacities: Joseph R. Biden, Jr., U.S. Dept. of Energy, Jennifer Granholm, David M. Turk, Geri Richmond, Brad Crabtree, and Amy Sweeney are hereby ENJOINED AND RESTRAINED, from halting and/or pausing the approval process for pending and future applications for LNG exports of liquified natural gas to non-FTA countries, effective immediately, to remain in effect pending the final resolution of this case, or until further orders from this Court, the United States Court of Appeal, or the Supreme Court of the United States. IT IS FURTHER ORDERED that no security is |

| | | |
|---|---|---|
| | | required to be posted by the Plaintiff States under Federal Rule of Civil Procedure 65. Signed by Judge James D Cain, Jr on 7/1/2024. (crt,Stewart, T) (Entered: 07/01/2024) |
| 07/12/2024 | 74 (p.1427) | Joint MOTION for Extension of Time to File Answer re 1 (p.25) Complaint with consent , Joint MOTION to Set Schedule (Motion Ripe Deadline set for 7/12/2024.) by All Plaintiffs. Motions referred to Thomas P LeBlanc. (Attachments: # 1 (p.25) Proposed order)(aty,Patterson, Autumn) (Entered: 07/12/2024), (QC'ed on 07/15/2024, by Chavis , J) |
| 07/12/2024 | | Set/Reset Deadlines as to 74 (p.1427) Joint MOTION for Extension of Time to File Answer re 1 (p.25) Complaint, with consent Joint MOTION to Set Schedule . Motion Ripe Deadline set for 7/12/2024. (crt,Chavis, J) (Entered: 07/15/2024) |
| 08/05/2024 | 75 (p.1435) | NOTICE OF APPEAL as to 72 (p.1363) Memorandum Ruling, 73 (p.1425) Order on Motion to Dismiss/Lack of Jurisdiction, Order on Motion to Dismiss for Failure to State a Claim, Order on Motion to Stay, Order on Motion for Preliminary Injunction, by Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk. (Filed on behalf of USA - Filing Fee not required) (aty,Thomas, Jeffrey) (Entered: 08/05/2024), (QC'ed on 08/05/2024, by WalkerSld , B) |
| 08/05/2024 | | NOTICE of Appeal Transcript Order Requirement regarding 75 (p.1435) Notice of Appeal. Pursuant to FRAP 10(b), the Appellant must file the transcript order form regardless of whether transcripts are necessary. Access the 5th Circuit site by clicking here. Hover over the Forms Fees & Guides tab, Forms, Court Reporter Forms, Transcript Order Form. <br><br> In following the instructions on the form, please note manual notification to the court reporter and the 5th Circuit Court of Appeals is STILL REQUIRED. (crt,WalkerSld, B) (Entered: 08/05/2024) |
| 08/07/2024 | 76 (p.1437) | APPEAL TRANSCRIPT REQUEST by Joseph R Biden, Jr, Brad Crabtree, U S Dept of Energy, Jennifer Granholm, Geri Richmond, Amy Sweeney, David M Turk for Motion Hearing held on June 20, 2024 before Judge James D Cain Jr. Court Reporter Deidre Juranka (aty,Woodward, Maggie) (Entered: 08/07/2024), (QC'ed on 08/07/2024, by WalkerSld , B) |
| 08/09/2024 | | USCA Case Number 24-30489 for 75 (p.1435) Notice of Appeal, filed by Amy Sweeney, David M Turk, Joseph R Biden, Jr, U S Dept of Energy, Geri Richmond, Brad Crabtree, Jennifer Granholm. (crt,WalkerSld, B) (Entered: 08/09/2024) |
| 08/09/2024 | | |

| | | |
|---|---|---|
| | | Set Deadline for Clerk re <u>75 (p.1435)</u> Notice of Appeal: Certify Appeal Record (24-30489) by Clerk to COA 8/26/2024. (crt,WalkerSld, B) (Entered: 08/09/2024) |

Louisiana et al v. Biden et al (2:24-cv-00406-JDC-TPL)

# Tab 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

STATE OF LOUISIANA, *et al.,*

Plaintiffs,

v.

JOSEPH R. BIDEN, JR., *et al.,*

Defendants.

Case No. 2:24-cv-00406

Hon. Judge James D. Cain, Jr.

Hon. Magistrate Judge Thomas P. LeBlanc

**NOTICE OF APPEAL**

Pursuant to 28 U.S.C. § 1292(a)(1), Defendants Joseph R. Biden, in his official capacity as President of the United States; the United States Department of Energy ("DOE"); Jennifer Granholm, in her official capacity as Secretary of the DOE; David M. Turk, in his official capacity as Deputy Secretary of the DOE; Geri Richmond, in her official capacity as Under Secretary of the DOE; Brad Crabtree, in his official capacity as Assistant Secretary of the DOE; and Amy Sweeney, in her official capacity as Director of the Office of Fossil Energy and Carbon Management within the DOE appeal to the United States Court of Appeals for the Fifth Circuit from the orders entered on July 1, 2024 (Dkt. Nos. 72, 73), which granted the State Plaintiffs' motion for preliminary injunction and denied Defendants' motion to dismiss.

Respectfully submitted this 5th day of August, 2024.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ J. Scott Thomas*

J. SCOTT THOMAS
KATHARINE LAUBACH

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.

MAGGIE WOODWARD
Trial Attorneys
Natural Resources Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-3553 (Thomas)
Telephone: (202) 305-8568 (Laubach)
Telephone: (202) 305-4224 (Woodward)
jeffrey.thomas2@usdoj.gov
katharine.laubach@usdoj.gov
maggie.woodward@usdoj.gov

THOMAS SNODGRASS
JEFFREY CANDRIAN
Trial Attorneys
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, Colorado 80202
Ph: 303-844-1382 (Candrian)
Email: Jeffrey.candrian@usdoj.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2024, I electronically filed **Defendants' Notice of Appeal**

with the Clerk of Court using the ECF system, which will automatically send email notification to

the attorneys of record.

*/s/ J. Scott Thomas*
JEFFREY SCOTT THOMAS

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.

# Tab 3

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

STATE OF LOUISIANA ET AL        CASE NO. 2:24-CV-00406

VERSUS        JUDGE JAMES D. CAIN, JR.

JOSEPH R BIDEN JR ET AL        MAGISTRATE JUDGE LEBLANC

## <u>JUDGMENT</u>

Pursuant to the Memorandum Ruling of this date,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion to Dismiss (Doc. 56) is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** to the extent that Plaintiffs' claims, Counts I-IX, XIII, and XIV, against President Joseph R. Biden, Jr. are DISMISSED with prejudice; otherwise, the Motion to Dismiss is **DENIED.**

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff States' Motion for Preliminary Injunction is **GRANTED.**

The Court finds that the Plaintiff States are entitled to the Injunctive Relief requested as to the LNG Export Ban. Accordingly,

**IT IS ORDERED** that the Defendants, in their official capacities: Joseph R. Biden, Jr., U.S. Dept. of Energy, Jennifer Granholm, David M. Turk, Geri Richmond, Brad Crabtree, and Amy Sweeney are hereby **ENJOINED AND RESTRAINED,** from halting and/or pausing the approval process for pending and future applications for LNG exports of liquified natural gas to non-FTA countries, effective immediately, to remain in effect

pending the final resolution of this case, or until further orders from this Court, the United

States Court of Appeal, or the Supreme Court of the United States.

**IT IS FURTHER ORDERED** that no security is required to be posted by the

Plaintiff States under Federal Rule of Civil Procedure 65.

**THUS DONE AND SIGNED** in Chambers on this 1st day of July, 2024.

_____

**JAMES D. CAIN, JR.**

**UNITED STATES DISTRICT JUDGE**

Tab 4

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **STATE OF LOUISIANA ET AL** | **CASE NO.  2:24-CV-00406** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **JOSEPH R BIDEN JR ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is a "Motion for a Stay Under 5 U.S.C. § 705 or Preliminary Injunction" (Doc. 13) filed by the following States: Louisiana, Alabama, Alaska, Arkansas, Florida, Georgia, Kansas, Mississippi, Montana, Nebraska, Oklahoma, South Carolina, Texas, Utah, West Virginia, and Wyoming (collectively referred to as the "Plaintiff States" or the "States"). The Plaintiff States move for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure against the following Defendants, in their official capacities: Joseph R. Biden, Jr., U.S. Dept. of Energy, Jennifer Granholm, David M. Turk, Geri Richmond, Brad Crabtree, and Amy Sweeney.   Plaintiff States claim that the Department of Energy ("DOE") has banned exportation of liquefied natural gas ("LNG") to countries without a free trade agreement ("non-FTA countries") in violation of the Administrative Procedure Act ("APA"), Congressional Review Act, and the United States Constitution. The Court had a hearing on June 20, 2024, and the Motion is ripe for decision.

# I. <u>BACKGROUND</u>

On January 26, 2024, President Biden declared that his "Administration is announcing today a temporary and perhaps indefinite pause on pending decisions of liquified natural gas exports."[1] On that same day the DOE also announced it was "paus[ing] determinations" of applications to export LNG to non-FTA countries,[2] which effectively bans new authorization of LNG exports to all but 18 countries[3] (referred to herein as the "Export Ban" or the "Pause").[4] The DOE's stated purpose for the Export Ban was to "update the assessments used to inform whether additional liquified natural gas (LNG) export authorization requests to non-FTA countries are in the public interest."[5] The DOE has publicly stated that the temporary deferral of final decisions is "[s]ubject to exception for unanticipated and immediate national security emergencies."[6] Plaintiff States contend that the Export Ban does not cite any authority, nor does it explain why the Export Ban is necessary, considering it is in direct contravention of the DOE's July 2023 Decision (hereinafter referred to as the "July 2023 Decision"), which concluded that "halt[ing] approval" of LNG exports has "no factual or legal basis."[7]

The DOE states that it will be leading the environmental review under NEPA, and thus has determined that it cannot complete the NEPA process in three pending non-FTA

---

[1] Plaintiffs' exhibit 26.
[2] Plaintiffs' exhibit 27; there are currently 40 non-FTA authorizations issued by DOE Defendants' exhibit A, ¶ 49, Doc. 56-1.
[3] The United States currently has FTAs for trade in natural gas with Australia, Bahrain, Canada, Chile, Colombia, Dominican Republic, El Salvador, Guatemala, Honduras, Jordan, Mexico, Nicaragua, Oman, Panama, Peru, republic of Korea, and Singapore. See Defendant's exhibit A, Jennifer L. Wade Declaration, n. 6.
[4] Plaintiffs' exhibit 28, p. 2, n. 4.
[5] Plaintiffs' exhibit 27, p. 1.
[6] DOE Announcement, Doc. 56, p. 15.
[7] Plaintiffs' exhibit 16, p. 27.

applications until the updated analyses are available to ensure that its NEPA analysis is supported by the most up-to-date environmental studies.[8]

## A.  RELEVANT FACTS

The United States is the largest producer of natural gas in the world and became the largest exporter of LNG in 2023.[9] In 2023, it was reported that 88.3% of the total U.S. LNG exports (December) went to non-Free Trade Agreement countries, while the remaining 11.7% went to Free Trade Agreement Countries (FTA").[10] The domestic LNG market is projected to lead to $63 billion in capital expenditures, boost GDP by $46 billion, and support 71,500 jobs annually from 2025 to 2030.[11] The state of Louisiana has enjoyed the benefit of an additional 18,000 jobs and $4.4 billion of contributions to its economy due to LNG exports.[12] The Plaintiff States benefit from revenue streams tied to natural gas production and LNG, such as severance taxes, taxes on LNG facilities and pipelines, bonus, rental, and royalty payments, as well as increased income, property, and sales taxes, and donations from LNG companies to support educational programs at public schools.[13]

---

[8] Defendants' exhibit E, Amy Sweeney Decl. ¶ 43.
[9] Plaintiff's exhibits 6-8; Victoria Zaretskaya, *The United States Was the World's Largest Liquefied Natural Gas Exporter in 2023*, U.S. Energy Info. Admin. (Apr. 1, 2024), https://bit.ly/3JEtwI3.
[10] Plaintiffs' exhibit 56, Global LNG Hub, LNG Market Analysis Platform, Doc. 63-5.
[11]  Am. Petro. Inst., *Study of Infrastructure Needed to Expand US LNG Exports to European and Asian Allies*, at 6 (July 18, 2023), https://bit.ly/3UoeGKs.
[12] Plaintiffs' exhibit 9, pp. 5, 43-44.
[13] See e.g., Plaintiffs' exhibits 11-14.

Russia sits on the largest natural gas reserves on the planet and is the second largest exporter, and next largest producer of natural gas.[14] Iran has the second largest natural gas reserves in the world and is the third largest gas-producing country.[15] In recent years, China's government has incentivized the transition from coal to natural gas to reduce air pollution; its natural gas output has nearly doubled in the past decade.[16] Consequently, global market share concerning the production and sale of natural gas is competitive.

### B. DOE'S REGULATORY AUTHORITY

LNG exports are governed by the Natural Gas Act ("NGA"), the purpose of which is to "encourage the orderly development of plentiful supplies of electricity and natural gas at reasonable prices." *NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 669-70 (1976). The DOE' regulatory authority extends only to imports and exports of natural gas, that is, the act of transporting natural gas to and from the United States. It does not extend upstream to production and downstream to consumption.[17]

Section 3 of the NGA directs entities wanting to export natural gas to a foreign country to apply for an order from the DOE, which authorizes it to do so. 15 U.S.C. § 717b(a). The NGA expressly instructs the DOE to "**ensure expeditious completion of**

---

[14] Int'l Energy Agency, *Energy Fact Sheet: Why Does Russian Oil and Gas Matter?* (Mar. 21, 2022), https://bit.ly/49ZPBv2; *Iran Pursuing $20B South Pars Pressure-Boosting Program*, Offshore (March 18, 2024), https://bit.ly/3w3QJjK.
[15] Plaintiff's exhibit 7; U.S. Energy Info. Admin., *Country Analysis Executive Summary: Iran* at 1, 4 (Nov. 17, 2022), https://bit/ly/3w3QJjK.
[16] Plaintiff's exhibit 7.
[17] Defendants' exhibit A, Jennifer L. Wade Declaration, ¶ 6. DOE's authorization is solely with respect to export (import) of natural gas and does not extend to authorization over the siting, construction, and operation of the liquefactions and export facilities. See e.g. *Sierra Club v. Fed. Energy Regul. Comm'n*, 827 F.3d 36, 40 (D.C. Cir. 2016).

all such proceedings," 15 U.S.C. § 717n(c)(1)(A) (emphasis added), meaning the DOE must act expeditiously upon application. See *Ingalls Shipbuilding v. Asbestos Health Claimants¸* 17 F.3d 130, 134 (5th Cir. 1994) (concluding agency has no discretion to delay ordering a hearing where the statute provides that the agency "upon application of any interested party shall order a hearing thereon"); *Ensco v. Offshore Co. v. Salazar*, 781 F.Supp.2d 333, 336-37 (E.D. La. 2011) (reasoning that "[n]ot acting on permit applications" is contrary to a statutory command that development be "expeditious").

It then provides that the DOE "issue such order upon application, unless, after opportunity for hearing, [the DOE] finds that the proposed exportation or importation will not be consistent with the public interest." 15 U.S.C. § 717b(a). Section 717b(a) has been interpreted to mean that the DOE shall grant an LNG export application unless it makes "an affirmative showing of inconsistency with the public interest." *Sierra Club v. DOE*, 867 F.3d 189, 203 (D.C. Cir. 2017). Thus, it creates a rebuttable presumption that a proposed export of natural gas is in the public interest. Any inconsistency with the public interest must be supported by substantial evidence and cannot be arbitrary and capricious. See 15 U.S. C § 717r(b); *W. Virginia Pub. Servs. Comm'n v. DOE*, 681 F.2d 847, 852-53 (D.C. Cir. 1982). Consequently, § 717b(a) "sets out a general presumption favoring . . . authorization" of natural gas exports and imports. *W. Virginia Pub. Servs. Comm'n*, at 856; see e.g., *Panhandle Producers & Royalty Owners Ass'n v. Econ. Regul. Admin.*, 847 F.2d 1168, 1176 (5th Cir. 1988).

The NGA does not define "public interest," therefore, the DOE has identified factors to evaluate based on principles established in its 1984 Policy Guidelines, and

through adjudicatory precedent. The term "public interest" in the NGA has been interpreted to mean "**to promote the orderly production of plentiful supplies of . . . natural gas at just and reasonable rates**." *NAACP,* 425 U.S. at 670 (1976) (emphasis added). For the last decade, the DOE has identified factors that it evaluates when reviewing an application to export LNG to non-FTA countries that include (1) the domestic need for the LNG proposed to be exported, (2) whether the proposed exports pose a threat to the security of domestic natural gas supplies, (3) whether the arrangement is consistent with DOE's policy of promoting market competition, and (4) any other factors bearing on the public interest as determined by the DOE. See e.g., *Sabine Pass Liquefaction, LLC,* DOE/FECM Order no. 4800 at 28.

Before reaching a final decision on any non-FTA application, the DOE must also comply with the National Environmental Policy Act ("NEPA"). 42 U.S.C. § 4321, *et seq.*; see *Sierra Club v. U.S. Dep't of Energy*, 867 F.3d 189, 192 (D.C. Cir. 2017)*.* "NEPA requires a federal agency to prepare an environmental impact statement ("EIS") as part of any 'proposal for legislation and other major Federal actions significantly affecting the quality of the human environments.'" *Norton v. S. Utah Wilderness, All.*, 542 U.S. 55, 72 (2004) (quoting 42 U.S.C. § 4332(2)(C)). Typically, the federal agency responsible for permitting the export facility—either the Federal Energy Regulatory Commission ("FERC") or the U.S. Department of Transportation's Maritime Administration("MARAD")—serves as the lead agency in the NEPA review process, and the DOE serves as a cooperating agency. See 33 U.S.C. § 1502(9)(A) and 49 C.F.R. §

1.93(h)(1) (for MARAS authority); at U.S.C. § § 717b(e)(1) and 717a(11) (for FERC authority).

In 2020, the DOE issued a rule establishing a categorical exclusion that removed consideration of upstream and downstream effects of LNG exports from the agency's NEPA analysis. See National Environmental Policy Act [NEPA] Implementing Procedures, 85 Fed. Reg. 78,197 (Dec. 4, 2020). The DOE concluded that its NEPA analysis is limited to considering only "**the potential environmental impacts starting at the point of delivery to the export vessel and extending to the territorial waters of the receiving country**," *Id.* at 78,199 (emphasis added), thereby excluding considerations of global environmental impacts of production and consumption of LNG. Because the DOE does not have authority over upstream and downstream activities of LNG exportation, the environmental impacts of such activities are not within the scope of DOE's environmental review. See *Department of Transportation v. Pub. Citizen*, 541 U.S. 752, 768 (2004); *City of Shoreacres v. Waterworth*, 420 F.3d 440, 452 (5th Cir. 2005); *Ctr. For Biological diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 485 (D.C. Cir. 2009).

## II. <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants have responded to the Plaintiff States' Motion for Preliminary Injunction with a Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and a Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6). Defendants assert that (1) this Court does not have jurisdiction, (2) Plaintiff States have failed to establish standing, (3) Plaintiff States do

24-30489.1369

not challenge a final agency action under the APA, and (4) Plaintiff States fail to state a claim for relief.

In ruling on a "Rule 12(b)(1) motion for lack of subject matter jurisdiction," the court may base its decision on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at *9 (quoting *Pickett v. Tex. Tech Univ. Health Sciences Ctr.*, 37 F.4th 1013, 1029 (5th Cir. 2022)). However, "a court may not resolve disputed facts on a Rule 12(b)(1) motion 'where issues of fact are central both to subject matter jurisdiction and the claim on the merits.'" *Id.* (quoting *Pickett*, 37 F.4th at 1030).

"[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears *certain* that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (emphasis added). And a court may deny a Rule 12(b)(1) motion and defer resolution of factual issues relating to jurisdiction where appropriate. See*, e.g.*, *Daily Wire*, 2024 WL 2022294, at *9 (declining "to resolve the factual dispute at this stage in the proceeding" and noting defendants may "reassert their factual attack at summary judgment or trial"); see *also Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) ("Insofar as the defendant's motion to dismiss raises factual issues, the plaintiff should have an opportunity to develop and argue the facts in a manner that is adequate in the context of the disputed issues and evidence.").

A Rule 12(b)(1) motion can be either a "facial" or "factual attack" on jurisdiction, and standards vary depending on the type of attack. *Williamson*, 645 F.2d at 412–13. For facial attacks, the court follows the typical standard of review and "accepts as true the complaint's well-pleaded, non-conclusory factual allegations." *Daily Wire, LLC v. United States Dep't of State*, --- F.Supp.3d ----, 2024 WL 2022294, at *5 (E.D. Tex. May 7, 2024). But if "the defendant 'submits affidavits, testimony, or other evidentiary materials,'" it can "challenge the truth of the jurisdictional allegations" in a "factual attack." *Id.* (quoting *Superior MRI Servs., Inc. v. All. Healthcare Servs.*, Inc., 778 F.3d 502, 504 (5th Cir. 2015)). Conclusory statements and self-serving affidavits based on legal arguments are "hardly sufficient to lodge a factual attack on jurisdiction." *See id.* at *9 (collecting cases).

Typically, "general factual allegations of injury resulting from the defendant's conduct" suffice to establish standing "[a]t the pleading stage," and courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *General Land Office v. Biden*, 71 F.4th 264, 272 (5th Cir. 2023) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Where there is a valid factual attack, "a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence." *Id.* at *5 (quoting *Superior MRI*, 778 F.3d at 504).

Ultimately, a factual attack does not allow defendants to depart entirely from the general rule that plaintiffs must support each element of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at

561; *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020) ("At earlier stages of litigation, however, the manner and degree of evidence required to show standing is less than at later stages.").

### A. Motion to dismiss for lack of jurisdiction

*i. Reviewability*

Defendants argue the Export Ban is not reviewable by this Court because it lacks jurisdiction Defendants suggest that under the NGA, Plaintiff States must seek judicial review only in the court of appeals. Defendants rely on the following, pertinent to a review of the Commission's[18] order:

> Any party to a proceeding under this chapter aggrieved by an **order** issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.

15 U.S.C.A. § 717r(b) (emphasis added). Noting that federal district courts are courts of general subject-matter jurisdiction, Defendants maintain that Plaintiff States should have filed their appeal in the court of appeal, not the district court. Defendants argue that the NGA provides for a special statutory review proceeding in one specific court, therefore any challenges to the administrative action has to take place in the designated forum—the court of appeal citing *Preminger v. Principi*, 422 F.3d 815, 821 (9th Cir. 2005) (involving

---

[18] "Commission" is defined as the Federal Power Commission ("FPC"). Since the FPC's abolition, courts have interpreted "Commission" to refer to the Federal Energy Regulatory Commission ("FERC") and DOE, both of which inherited some of the FPD's functions. See *Pennsylvania Pub. Util. Comm'n v. Bodman*, 2008 WL 3925840, at *2 (M.D. Pa. Aug. 21, 2008).

a First Amendment challenge to a VA regulation); *Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010). ("Specific grants of jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts).

Defendants argue further that Plaintiffs' claims are "inescapably intertwined" with the review of final orders under the NGA, see *Ligon* 614 F.3d at 155, and must be brought in a court of appeals in the first instance. Defendants insist however, that its decision to stay any pending applications is not a final agency action and argue that the Plaintiff States may not challenge the alleged inaction by the DOE in district court, citing *Am. Petroleum Inst. v. U.S. Dep't of Interior*, 2022 WL 16704444 (W.D. La. Oct. 5, 2022), *report and recommendation adopted sub nom., Am. Petroleum Inst. v. U.S. Dept. of Interior*, 2022 WL 16701179 (W.D. La. Nov. 3, 2022). (Recommending dismissal of claim as to Interior's delay approving the offshore oil and gas leasing program, relying on the plain language of the relevant statute).

Plaintiff States maintain that this case falls squarely within the Court's federal question jurisdiction because it arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Plaintiff States assert that the Export Ban is not reviewable in the courts of appeal because it is not an order pursuant to 15 U.S.C. § 717r, and therefore not channeled through § 717r's administrative review provisions.

Plaintiff States remark that they are not seeking review on the merits of a denial of a particular application and note that § 717r applies to "order[s]" issued in discrete adjudication proceedings, not to actions like the LNG Export Ban that broadly applies. *Nat'l Min. Ass'n v. Dep't of Labor*, 292 S.3d 849, 856 (D.C. Cir. 2002) (per curiam)

24-30489.1373

(concluding a statute creating exclusive review scheme for an "order" does not "apply to review of a regulation").

Plaintiff States maintain the Export Ban is not "inescapably intertwined" and their challenge to the Export Ban is not collateral. Instead, Plaintiff States challenge the Secretary's exercise of "power generally." Plaintiff States maintain that they are not challenging the DOE's process, rather they are challenging the DOE's authority to halt that process altogether, in complete contravention of the NGA.

Finally, to buttress their position that this case falls outside any direct or implicit reach of § 717r, Plaintiff States assess the three factors in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), as to whether: (1) "precluding district court jurisdiction foreclose[s] all meaningful review of the claim"; (2) "the claim [is] wholly collateral to [the] statute's review provisions"; and (3) "the claim [is] outside the agency's expertise." *Id.* (quotations omitted).

Plaintiff States remark that if this Court lacks jurisdiction, Plaintiff States claims will have no meaningful review. Plaintiff States rely on the DOE's "Notice Dismissing Request for Rehearing" made by Commonwealth LNG, LLC[19] which addressed the DOE's "pause" as to any "public interest determination of pending (and newly filed) non-FTA export applications until the Update is completed."[20] To be sure, the DOE expressly stated that its "Update" (herein referred to as the Export Ban) "is not an 'order' and that

---

[19] Commonwealth filed an application with DOE in 2019, requesting long-term, multi-contract authorization to export domestically produced LNG in a volume equivalent to approximately 441.4 billion cubic feet per year (Bcf/yr) of natural gas (1.21Bcf/d) from its proposed natural gas liquefaction facility to be located in Cameron Parish, Louisiana to both FTA and non-FTA countries. The FTA portion of the application was approved in 2020. Defendants' exhibit D, p. 8, Doc. 56-4.
[20] Defendants' exhibit D, p. 1, Commonwealth LNG, LLC, dated March 27, 2024, Doc. 56-4.

Commonwealth has not been 'aggrieved' under §19 of the NGA and DOE's regulations..."[21] It is remarkable to this Court that Defendants now argue that this matter should be appealed to the court of appeals because the NGA requires that an "Order" be appealed to the court of appeals, when they expressly stated and found that the "Update" was not an Order.

Next, Plaintiff States allege that its claims are "wholly collateral to [the] statute's review provisions." Plaintiff States challenge the Secretary's exercise of her "power generally" to not "proceed at all," but is not challenging how the Secretary wielded her power in a particular application proceeding." See *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192-193 (2023); see also *Ohio Coal Ass'n v. Perez*, 192 F.Supp.3d 882, 898 (S.D. Ohio 2016) (concluding "claims are wholly collateral to [a statutory] review scheme" where "they challenge a rule-making procedure and the new rule's content, not an enforcement action").

Lastly, Plaintiff States maintain that their claims are "outside the agency's expertise." *Axon Enter.*, 598 U.S. at 186. The Court agrees with Plaintiff States that its claim is a challenge to Defendant's authority to halt the permit process in direct contravention of the NGA. Plaintiff States' challenge does not encompass the DOE's process for evaluating LNG applications, and therefore the Court is convinced that the claims made here are outside the agency's expertise.

The Court concurs with the Plaintiff States, and finds that the Export Ban, which applies broadly to all applications, as opposed to an "Order" directed to a particular

---

[21] *Id.* p. 2.

entities' application, does not fall withing the ambit of § 717r. Furthermore, the Court finds that considering the factors in *Thunder Basin,* Plaintiff States' claims here fall outside the ambit of § 717r. As such, Defendants' argument that this matter should have been filed in the court of appeals is without merit.

> *ii. Standing*

Defendants move to dismiss the Plaintiff States' claims based on their assertion that Plaintiff States have failed to establish standing for this court to have jurisdiction. Here, the Court will address Plaintiff States' required "standing" and likewise apply the conclusion to Plaintiff States' Motion for Preliminary Injunction.

To demonstrate standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). Plaintiff has the burden of establishing all three elements. *Id.*; *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022). The plaintiff bears the burden of establishing these elements, *Spokeo*, 578 U.S. at 338, and "demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017).

> a*) injury-in-fact*

To establish injury in fact, a plaintiff must show it suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at

24-30489.1376

560. If a plaintiff's alleged injuries are forward-looking, the plaintiff must show "a material risk of future harm" that is "sufficiently imminent and substantial." *Perez*, 45 F.4th at 827 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)).

Plaintiffs need only show that the "threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S.Ct. 2334 (2014); see also *Spokeo*, 578 U.S. at 341 (recognizing that the "risk of real harm" can "satisfy the requirement of concreteness"). Showing substantial risk does not require certainty, but only that "the threat of injury is sufficiently likely" or "fairly likely." *All. For Hippocratic Med. v. FDA*, 78 F.4th 210, 227-28 (5th Cir. 2023) (collecting cases), *cert. granted*, 144 S.Ct. 537 (2023); see also *Crawford v. Hinds Cnty. Bd. Of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021) ("fairly likely"); see also *Clinton v. City of New York*, 524 U.S. 417, 432 (1998) (concluding there was "a sufficient likelihood of economic injury to establish standing").

"For standing purposes, a loss of even a small amount of money is ordinarily an injury." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017); See, e.g., *McGowan v. Maryland*, 366 U.S. 420, 430-31, 81 S.Ct. 1101 (1961) (finding that appellants fined $5 plus costs had standing to assert an Establishment Clause challenge); see also *Clinton v. City of New York*, 524 U.S. 417, 430-431, 118 S.Ct. 2091 (1998) (imposition of a "substantial contingent liability" qualifies as an injury).

Defendants maintain that Plaintiff States lack standing because they are only indirectly affected by DOE's Export Ban. Thus, Defendants posit that Plaintiff States' injuries are speculative, and not concrete or imminent.

Defendants argue that as non-applicants, the Plaintiff States can assert only speculative economic injuries by claiming that the Export Ban will result in a permanent loss of future LNG exports. Specifically, Defendants assert that Plaintiff States' injuries derive from benefits they assume they will receive if: (1) DOE authorizes the export applications of third parties, and (2) those third-party facilities materialize.[22] Defendants argue the there is no guarantee that these pending applications will be approved, and Plaintiff States have no control over whether facilities are constructed once the permit is approved. Defendants interpret Plaintiff States' assertion that the Export Ban will cause a loss of jobs, royalties and taxes as illusory.

Defendants inform the Court that of the seven (7) pending applications affected by the Export Ban, those applications relate to four proposed sites in Louisiana and one in Texas (the other two are in Mexico).[23] Defendants suggest that Plaintiff States' injuries that include loss of jobs, royalties and taxes are illusory because these supposed harms stem from the assumption that from now until early in year 2025—Defendants' alleged end date of the Export Ban—LNG companies will invest money in the LNG projects that will generate jobs, royalty payments, and tax revenue.

The Plaintiff States assert that they have concrete and particularized injuries due to lost tax revenues to LNG exports, decreased future export capacity, future marketability, future production volumes, and reduced and eliminated investments in the development and production of natural gas and supporting infrastructure. The Plaintiff States provide

---

[22] There are seven (7) pending applications affected by the Export Ban, four of which relate to proposed sites in Louisiana, one in Texas, and two in Mexico. Defendants' exhibit E, Sweeney Declaration, ¶¶ 42-43.
[23] Defendants' exhibit E, Amy Sweeney Declaration, ¶¶ 42-43.

24-30489.1378

examples such as the fact that "[s]everal LNG buyers delayed signing new long-term contracts with U.S. producers, a deferred investment decision on a planned LNG export facility in Louisiana, and delayed construction of an export terminal in Louisiana.[24] The States assert that even if there is just a delay, certain States, such as Texas conservatively project a loss of $259.8 million in production tax revenues over five years, assuming that the Export Ban causes only a two-year delay for those LNG export facilities with currently pending application.[25] This projection does not take into account the greater irreparable harm that would be incurred should the pending LNG projects be canceled altogether.[26] Thus, the Plaintiff States contend that their loss of severance or production tax revenues is a cognizable injury. See *Wyoming v. Oklahoma*, 502 U.S. 437, 440-41, 447-48 (concluding that Wyoming had standing to challenge a law that decreased sales of Wyoming-mined coal based on diminished severance tax revenues); *El Paso County v. Trump*, 982 F.3d 332, 340 (5th Cir. 2020) (distinguishing between the loss of general tax revenues, which did not support standing in that case, with "the loss of a specific tax revenue" that does support standing); *City of Oakland v. Lynch*, 798 F.3d 1159, 1163-64 (9th Cir. 2015) (concluding city had Article III standing to challenge federal government's forfeiture action against medical marijuana dispensary based on loss of tax revenues); *New York v. Yellen*, 15 F.4th 569, 576-77 (2nd Cir. 2021) (concluding loss of tax revenue was a cognizable injury where States showed a "realistic" "chain of

---

[24] Plaintiff's exhibits 1 and 40.
[25] Plaintiff's exhibit 44, Declaration of Glenn Hegar, Texas Comptroller of Public Accounts, Doc. 13-46.
.
[26] *Id.*; Plaintiff's exhibit 5, pp. 6, 17-18.

economic events" tying the loss to the challenged statute); *Florida v. Becerra*, 544 F.Supp.3d 1241, 1253 (M.D. Fla. 2021) (similar).

Defendants argue that Texas' loss of future tax production is the equivalent of a general tax revenue, which is an indirect result of federal policy, and not a cognizable injury in fact. Citing *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 339 (5th Cir. 2020). Defendants also argue the Plaintiff States' assertion of injuries is nothing more than speculation that a LNG company will invest money in any project after receiving export authorization. Thus, Defendant posit that these alleged hypothetical injuries are not concrete or imminent.

Defendants also contend that the Plaintiff States' reliance on *Wyoming, supra,* is misplaced because Wyoming had provided unrebutted evidence that after the challenged Oklahoma law took effect, it had a direct effect on Wyoming's coffers in the form of lost severance taxes that it would have otherwise collected. Defendants suggest that the deferred investment in a plant facility in Cameron, Louisiana (Sempra)[27] and the delayed construction of an export terminal because of the Export Ban are insufficient to confer standing.

On the other hand, Plaintiff States contend that it has alleged and established legally cognizable injuries that are concrete and particularized.[28] Plaintiff States assert that not including their quasi-sovereign injuries, their injuries include three categories: (1) loss of specific severance and production tax revenues on natural gas; (2) harm to

---

[27] Defendants note that Sempra's export request for the planned facility in Cameron, Louisiana has already been authorized and there are no future export authorizations from the facility. Defendant's exhibit A, Jennifer L. Wade Declaration, ¶ 64.
[28] Complaint, ¶¶ 112-56.

Plaintiffs States' financial and proprietary interests as land and mineral owners, and (3) procedural deprivation.

Plaintiff States state that the Export Ban will decrease natural gas production, which will automatically decrease production and severance taxes on natural gas.[29] Plaintiff States submit the Declaration of David E. Dismukes, Ph. D., who declares that the Export Ban will (1) "create[e] considerable regulatory and policy uncertainty that will likely result in the significant delay if not outright cancellation of some LNG export facility projects along the coast," (2) "negatively impact natural gas markets that help motivate a large part of this energy manufacturing investment which relies heavily on not only low-priced natural gas, but stably priced natural gas" thereby causing an unstable, volatile, natural gas price environment, (3) cause domestic natural gas prices to increase due to the decreased sale of natural gas to international markets thereby making the sale of natural gas less profitable, (4) negatively impact investment decisions and cause capital investment uncertainty, thereby creating a negative impact on the local economic development of an entire community, (5) negatively impact state revenues from the prospective LNG facilities, the Plaintiffs States (significantly effecting Louisiana and Texas) rely upon, (6) place at risk local and state taxes, such as sales and use taxes, franchise fees, local assessments, income tax revenues from contractors participating in the development of the facility, gasoline and other fuel taxes, as well as future property taxes, ad valorem taxes, corporate income taxes, personal income taxes, sales and use taxes, ect. (7) cause delays in increasing LNG capacity that will likely delay increases in

---

[29] Complaint, ¶ par a113-14; see e. g., Id. at ¶ ¶ 117, 145, 153-154; Plaintiffs' exhibits 5, 8, 11, 15, 41-44.

natural gas production, (8) negatively impact natural gas bonus payments and natural gas royalty revenues, (9) negatively impact a variety of sales and use tax revenues and other taxes from decreased natural gas drilling activities and natural gas production, and (10) cause decreased growth in the natural gas production jeopardizing local and state tax revenue collections, corporate income tax collections, ad valorem and property tax collections, sales and use tax collections and others.[30]

Dr. Dismukes concludes that the Export Ban will place at risk approximately $72.6 billion in currently announced and pending LNG export facilities, of which 84.85% is anticipated to be located in Louisiana ($61.63 billion).[31] In summation, Dr. Dismukes posits that the DOE's "actions place an inordinate amount of risk and harm on Louisiana's future economic growth potentially delaying this investment, for potentially years, or even leading to project cancellations in some scenarios."[32]

Additionally, Plaintiff States declare that the delayed receipt of revenues, and "the forgone time value of that money" is likewise "an actual tangible pecuniary injury." *Am. Fed'n of Gov't Emps. v. Office of Pers. Mgmt.*, 928 F.3d 42, 66 (D.C. Cir. 2019) (per curiam); see *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) ("[T]he temporary loss of use of one's money constitutes an injury in fact for purposes of Article III."); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010). Here, Plaintiff States have submitted credible evidence that it is certain that the Export Ban is going to cause

---

[30] Dismukes Declaration, Doc. 13-8.
[31] *Id,* ¶¶ 41-42.
[32] *Id.*

the Plaintiff States' a delay in receipt of tax revenues, royalty payments, and other various taxes. This evidence is uncontradicted.

Plaintiff States also maintain that they have been deprived of procedural rights by the DOE's "violation of the APA's notice-and-comment requirements." *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019). Plaintiff States argue that this deprivation of a procedural right likewise is a cognizable injury for standing purposes.

Of significance, the Plaintiff States point out that the DOE has NEVER found an LNG export application to be inconsistent with the public interest and has approved every past LNG export application.[33] Moreover, Defendants have not shown any evidence that the DOE has ever decided to not approve an export application. As such, it is a tough stretch for this Court to find that the Plaintiff States' injuries are speculative because applications are pending and may not be approved.

Plaintiff States need show only a nominal amount of money harm. See *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("A dollar of economic harm is still an injury-in-fact for standing purposes.") The Court is persuaded that Plaintiff States have sufficiently alleged that they have and will suffer an injury-in-fact that is actual and imminent based on their allegations of loss of specific tax revenues, decreased or eliminated investments in the development and production of natural gas and supporting infrastructure.[34] Additionally, Plaintiff States have alleged and provided evidence that the Export Ban has already caused LNG buyers to delay signing long-term contracts with

---

[33] Plaintiffs' exhibit 10, p. 2.
[34] Plaintiffs' exhibit 5, ¶ 4, 6, 8-15; Plaintiffs' exhibit 39.

U.S. producers, and one company has deferred investment on a planned LNG plant in Louisiana, and another company has delayed construction of an export terminal in Louisiana.[35]

Accordingly, the Plaintiff States have alleged a likelihood of establishing an injury-in-fact sufficient to satisfy Article III.

### b. Traceability and Redressability

To establish causation, the alleged injury must be fairly traceable to the challenged actions of the defendant. *Louisiana v. Dep't of Homeland SEC.*, 2024 WL 1328434, at *3 (E.D. La. Mar. 28, 2024). Where the plaintiff is not the object of the government action or inaction, the causal connection is "substantially more difficult" to establish. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Lujan*, 504 U.S. at 562)).

The redressability element of the standing analysis requires that the alleged injury is "likely to be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 141 U.S. 141 U.S. 2104, 2115 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n. 19 (1984), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Additionally, courts typically find that where an injury is traceable to a defendant's conduct, it is usually redressable as well. See e.g., *Scenic Am., Inv. v. United States Dep't of Transportation*, 836 F.3d 42, 54 (D.C. Cir. 2016) ("[C]ausation and

---

[35] Plaintiffs' exhibits 1 and 40.

24-30489.1384

redressability are closely related and can be viewed as two facets of a single requirement.").

Plaintiff States assert that if the Court vacates the Export Ban, investments will increase as well as development and production, all to the benefit of producers, land and mineral right owners, royalty owners and the States who receive significant revenues and benefits tied to production. See *Texas v. United* States, 50 F.4th 498, 519 (5th Cir. 2022) (recognizing traceability is satisfied when the challenged action "exacerbate[s]" an injury, even when it "is not the sole cause"); *General Land Office*, 71 F.4th at 274 (finding redressability satisfied even if there would be a delay in the remedy's effectiveness).

Defendants argue that Plaintiff States cannot show that the Export Ban is causally connected to their alleged injury. Defendants argue that there are numerous reasons why an LNG company may decide not to invest, namely increased natural gas supply, decreased demand, loss of investors, or shifting investment priorities.

Noting that the Export Ban and/or Pause is not a ban but merely a delay that temporarily defers final decisions, Defendants argue that there is no "direct link" between Plaintiff States' alleged loss of future tax and other revenue and the Export Ban. Defendants posit that its "Pause" as to pending and future applications is too attenuated from Plaintiff States' alleged injuries and thus not traceable because the Plaintiffs States are not an applicant awaiting a decision on export authorizations.

Plaintiff States argue that they have satisfied the "*de facto* causality" standard of Article III, *Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2566 (2019), and that their

injuries are substantially likely to occur due to the Export Ban. Plaintiff States assert that the Export Ban will cause a loss of multiple sources of revenues for the States, delay investments,[36] and destabilize the natural gas market allowing certain competitive countries to move ahead of this country's superior standing concerning natural gas exports.

A preliminary injunction would require the DOE to process the pending applications in accordance with the NGA, as currently written, and in accordance with § 717(a), which not only creates a rebuttable presumption that a proposed export of natural gas is in the public interest and 15 U.S.C. § 717n(c)(1)(A) but requires the DOE to act expeditiously upon application. Specifically, a stay or injunction, followed by a vacatur of the Export Ban, will necessarily redress Plaintiff States' injuries. Redressability only requires a plaintiff to "show that a favorable ruling could potentially lessen its injury, it need not definitively demonstrate that a victory would completely remedy the harm." *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014); see *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385-86 (5th Cir. 1986). Furthermore, the likely lessening of the harm does not need to be immediate—the delay of "the effectiveness of a remedy" is "irrelevant to the question" of whether the "relief would ameliorate" the harm. *General Land Office,* 71 F. 4th at 274.

---

[36] Particularly noting that the Export Ban has impacted Sempra's expansion of the Port Arthur, Texas LNG project. Plaintiffs' exhibit 60; Defendants' exhibit A, p. 23 (chart), and Commonwealth LNG in Cameron, Louisiana who has been waiting on DOE approval since November 2022 and was targeting a final decision in 2024.

The Court finds that the lost or delayed revenues tied to the natural gas production,[37] is a concrete and imminent injury that supports standing. Additionally, Plaintiff States have shown that there is a here and now injury by the delayed investments, which inherently causes delays and reduces future natural gas production and consequently reduces revenues.[38] Consequently, Plaintiff States have shown that the DOE's LNG Export Ban is fairly traceable to the Plaintiff States' alleged injuries and is redressable by this Court. The Court finds that Plaintiffs States' alleged harms are non-speculative and substantially likely to occur, and as such the Plaintiff States have sufficiently established standing.

### iii. Final agency action

Defendants argue that the DOE's Export Ban is not a final agency action and therefore not reviewable. Defendants move to dismiss Counts I-XI, XIV for lack of jurisdiction because Plaintiffs are not challenging final agency action. The Plaintiff States argue otherwise.

An action is "final" under the APA if it (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) has "legal consequences." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016). Plaintiff States argue that the Export Ban is a prohibition on the performance of the DOE's statutory duty to consider and grant applications unless there is a finding that the particular exports "will not be

---

[37] Severance and production taxes, royalties, bonus payments, and various other related taxes.
[38] Plaintiffs' exhibit 1, p. 1 (explaining that LNG Export Ban "is already stalling progress for projects" and precluding deals from closing); Plaintiff's exhibit 58, ¶ 13 (explaining the company was delaying purchasing mitigation credits to complete Louisiana's permitting process due to the LNG Export Ban); ¶ ¶ 18-21 (explaining the LNG Export Ban has forced the company to delay hiring workers in Louisiana and Texas this summer, has delayed tax payments and purchases of natural gas, and has generally "created delay and uncertainty that has significant financial implications for the LNG industry.")

consistent with the public interest." 15 U.S.C. § 717b(a). Thus, the Plaintiff States challenge the DOE's authority to halt processing permits in direct violation of the NGA.

The Plaintiff States assert that the Export Ban is the consummation of the decisionmaking process because it immediately and finally decides that export applications should not be considered until the (undisclosed) date at which the (not-public) review of the public-interest determination will be completed. The Plaintiff States remark that legal consequences flow from this action because entities are no longer entitled to have their applications considered and presumptively granted. See *Natural Res. Defense Council v. Wheeler*, 955 F.3d 68, 78 (D.C. Cir. 2020). Alternatively, the States argues that the DOE's Export Ban is an *ultra vires* act outside of the DOE's statutory authority, and it violates the Constitution.

Defendants maintain that Plaintiffs States' challenge is improper because the Export Ban is only an interim step in the DOE's public interest review process, and not a "final agency action" as required by the APA.

Plaintiff States maintain that the Export Ban is a final agency action because it is a prohibition on the performance of the DOE's statutory duty to consider and grant applications unless there is a finding that the particular exports at issue "will not be consistent with the public interest." 15 U.S.C. § 717b(a). Moreover, the Plaintiff States challenge the DOE's unlawful delay as to pending LNG export application across the board.

Plaintiff States contend that the DOE's decision to halt the process is not an intermediate or temporary step based on the NGA and the DOE's longstanding practice,

which entitled applicants to have their specific export application considered and presumptively granted, unless there was a finding that the particular exports at issue would "not be consistent with the public interest." 15 U.S.C. § 717b(a). Plaintiff States assert that the effect of the Export Ban is to presume that LNG exports are not in the public interest unless and until (1) the purported "Update" is completed, and (1) there is some future finding otherwise, all of which changes the NGA's public interest's presumption in favor of granting non-FTA export applications.   Plaintiff States further maintain that the LNG Export Ban's mandatory language shows that it "binds" the agency and "accordingly gives rise to legal consequences." *Texas v. EEOC,* 933 F.3d at 441. Moreover, the DOE is treating the Export Ban as binding, as it has expressly stated that it will not consider or issue an order on an export application until after the purported "Update" and future comment process is complete.[39]

The Court is persuaded by Plaintiff States that the Export Ban is a final agency action and thus reviewable by this Court.

## B. Motion to Dismiss for failure to state a claim

Defendants move to dismiss Plaintiff States claims in Counts I -IV, XII, and XIV-XVI for failure to state a claim and any APA claims against the President because the President is not subject to suit under the APA. Specifically, Defendants maintain that Counts I-IV should be dismissed because Plaintiff States do not have standing, and all APA related claims must be dismissed because there is no final agency action. Defendants also move to dismiss any APA claims (Counts I-XI, XIII, XIV) against the

---

[39] Defendants' exhibit D, pp. 10-11.

24-30489.1389

President because his actions are not subject to APA review citing *Franklin v. Massachusetts*, 505 U.S. 788 (1992).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when a plaintiff "fail[s] to state a claim upon which relief can be granted." *In re Belden Invs. LLC*, 2021 WL 2315841, at *1 (W.D. La. June 7, 2021). Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993)). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (cleaned up). Only claims that are both legally cognizable and plausible survive Rule 12(b)(6). See *Walker v. Motorola Mobility LLC*, 670 F. Supp. 3d 387, 393 (W.D. La. 2023) (citing *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

"When reviewing such a motion, the court should focus on the complaint and its

attachments." *Walker*, 670 F. Supp. 3d at 393 (citing *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012)). The Court can "also consider documents referenced in and central to a party's claims," *id.* and "may also consider matters of which [they] may take judicial notice." *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (cleaned up).

As to the APA claims against the President, Plaintiff States do not object to the dismissal of the APA claims against the President (Counts I-XI, XIII), but do object to his dismissal as a Defendant from Count XIV.[40]

As to Count XIV, Plaintiff States contend that they have sufficiently alleged that the Export Ban violates Article I of the United States Constitution because Defendants cannot show that Plaintiff States' constitutional claim is invalid. Defendants argue that the Export Ban is consistent with the NGA and the DOE's statutory duty to determine whether non-FTA exports would be inconsistent with the public interest. Plaintiff States have plead that the Export Ban is an unlawful exercise of power that belongs to Congress citing *Larson v. Domestic & Foreign Commerce Corp.*, 682, 689-90 (1949).

Plaintiff States argue that the Constitution vests Congress with "[a]ll legislative Powers, "including the power "[t]o regulate Commerce with foreign Nations, and among the several Sates, and with the Indian Tribes." U.S. Const. art. I, § § a, 8, cl. 3. Thus, Defendants' attempt to regulate foreign commerce without congressional authorization through the Export Ban violates Article 1 of the Constitution.

Considering Plaintiff States' concession that Counts I-XI, XIII against the President should be dismissed, Defendant's Motion will be granted as to these claims

---

[40] Plaintiffs' Opposition to Defendants' Motion to Dismiss, p. 49, footnote 63, Doc. 63.

against the President. However, Plaintiff States' claims against the President as to Count XIV against the President remains viable.

### i. Counts I and II

Count I allege that the LNG Export Ban is a final agency action, and contrary to law.  5 U.S.C.  § 706;[41] 15 U.S. C. § 717b(a). Count II alleges that the LNG Export Ban is not authorized by statute. 5 U.S.C. § 706. See *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) (quoting *Louisiana Publ. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)) ("An agency . . . 'literally has no power to act'—including under its regulations—unless and until Congress authorizes it to do so by statute."

Defendants move to dismiss Counts I and II maintaining that the DOE has the statutory authority to defer final determinations during the pendency of the "Update." Defendants suggest that the Plaintiff States have inaccurately framed the Update[42] as an Export Ban that is "not in accordance with law" or is "in excess of statutory . . . authority [] or limitations, or short of Statutory right."[43] Defendants suggest that the "Update" is in accordance with the NGA and is a necessary predicate to making the statutorily-mandated public interest determination. Defendants remark that the DOE cannot make a decision concerning public interest with outdated information. Defendants assert that the NGA does not prescribe a process for deciding what is or is not in the public interest, and it does not require the DOE to reach its determination within a particular timeframe.

---

[41] § 706(2)(A), (C) requires that under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or is "in excess of statutory . . . authority[] or limitations, or short of statutory right."
[42] Referred to as the LNG Export Ban or Export Ban by the Plaintiff States; Defendants refer to the Export Ban as the "Update" or "Pause."
[43] Complaint ¶ ¶ 159, 162 (citing 5 U.S.C. § 706(2)(A), (C)).

Defendants remark that the NGA allows the DOE to have considerable discretion in implementing § 3 of the NGA. *Distrigas Corp. v. Fed. Power Comm'n*, 495 F.2d 1057, 1064 (D.C. Cir. 1974).

Plaintiff States contends that § 3 of the NGA clearly prescribes that the DOE "shall issue such [export authorization] order upon application, unless, after opportunity for hearing, it finds that the proposed exportation . . . will not be consistent with the public interest." Furthermore, 15 U.S.C. § 717b(a) instructs the agency to "ensure expeditious completion of all such proceedings." 15 U.S.C. § 717n(c)(1)(A). To be sure, the NGA requires the DOE to act expeditiously upon application and not to invent a reason to "pause" the process. See *Ingalls Shipbuilding v. Asbestos Health Claimants*, 17 F.3d 130, 134 (5th Cir. 1994) (concluding agency has no discretion to delay ordering a hearing where the statute provides that the agency "upon application of any interested party shall order a hearing thereon"); *Ensco Offshore*, 781 F.Supp.2d at 336-37 (reasoning that "[n]ot acting on permit applications" is contrary to a statutory command that development be "expeditious"); see also *Procedures for Liquified Natural Gas Export Decisions*, 79 Fed. Reg. 48,132, 48,132-33 (Aug. 15, 2014) ("For proposed exports [non-FTA countries] . . . , the Department conducts an informal adjudication and grants the application unless the Department finds that the proposed exportation will not be consistent with the public interest.")[44]

---

[44] Defendants' exhibit A, ¶ 13 (acknowledging the Department usually issues a notice of application on the Federal Register and "invites interested persons to submit protest," comments, etc. within 60 days); Plaintiffs' exhibit 58, ¶ 6.

Here, the Plaintiff States posit that while the DOE can update its information by conducting or commissioning new studies, the NGA does not give it the authority to halt the consideration and approval of export applications while doing so. The language of the NGA clearly requires an expeditious application process. See e.g., Plaintiffs' exhibit 16, p. 27 (finding no "legal basis" for the DOE "to halt approval of pending applications to export LNG to non-FTA countries until DOE 'complete[s] a final revision of its policy guidelines'"; cf. *Louisiana v. Biden*, 622 F.Supp.3d 267, 293 (W.D. La. Aug. 18, 2022) ("Although there is certainly nothing wrong with performing a comprehensive review, there is a problem in ignoring acts of Congress and stopping the [oil-and-gas leasing] process while the review is being completed."). The Court finds that the Plaintiff States have sufficiently alleged its claims as to Counts I and II. Therefore, Defendants' Motion to Dismiss Counts I and II will be denied.

### iii. Count III

Count III alleges that the LNG Export Ban violates the APA's notice-and-comment requirement. 5 U.S.C. § 706. A "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Notice-and-comment rulemaking "give[s] interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments . . . ." 5 U.S.C. § 553(c).

Defendants maintain that the Export Ban is not a rule that would trigger the APA's notice-and-comment procedures, whereas the Plaintiff States contend that it is a substantive rule that requires the APA's notice-and-comment procedures. Defendants

24-30489.1394

argue that Count III fails because the Export Ban is a component of the informal adjudication process that DOE uses to evaluate non-FTA export applications.

The Plaintiff States contend that the DOE's actions will "ultimately turn[] on the attributes" of the action. *City of Arlington v. FCC*, 668 F.3d 229, 241 (5th Cir. 2012), *aff'd,* 569 U.S. 290 (2013); see *W&T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237 (5th Cir. 2019) (noting deference to agency's characterizations "is minimal" and the primary focus is "the actual characteristics of the agency action"). The Plaintiff States argue that the Export Ban is a rule because it is an agency statement of general or particular applicability and has a future effect designed to implement, interpret, or prescribe law or policy that does not resolve a specific dispute in a specific case. Instead, it broadly and immediately halts consideration of pending and future non-FTA export applications. See *City of Arlington*, 668 F.3d at 242 (contrasting "[a]djudications" that "typically resolve disputes among specific individuals in specific cases" with rulemaking that "affects the rights of broad classes of unspecified individuals" (quotations omitted)).

Additionally, Plaintiff States contend that the Export Ban alters the DOE's obligations and current and future applicants' rights and changes the methods used in reviewing applications by not ensuring an expeditious completion of the export approval process as mandated by 15 U.S.C. § 717n(c)(1)(A). Of significance, the DOE has changed its prior method as required by 15 U.S.C. § 717b(a) because it is not approving

24-30489.1395

LNG export applications to non-FTA countries despite there being no finding that a particular export is inconsistent with the public interest after an opportunity for hearing.[45]

Defendants maintain that the Export Ban is not a rule because it does not change the procedure with which the DOE processes applications. The Court is convinced that the DOE's decision to halt the process of pending and future exports to non-FTA countries is a rule and not an adjudication as suggested by Defendants. The Export Ban changes the methods the DOE uses to review applications and completely contradicts the express language in the NGA that requires the DOE to ensure expeditious completion of the export approval process. In addition, the Export Ban prohibits LNG exports be authorized "upon application, unless, after opportunity for hearing," the DOE finds the specific exports are not in the public interest in case-by-case adjudications. To the contrary, the DOE is not approving LNG export applications to non-FTA countries despite there being no finding that a particular export is inconsistent with the public interest after an opportunity for hearing. The Courts finds that the Plaintiff State have sufficiently plead a claim as to Count III and will deny Defendants' Motion to Dismiss as to this claim.

*iii. Count IV*

Count IV alleges that the LNG Export Ban is arbitrary and capricious because it is unreasoned.

---

[45] See e.g., Plaintiffs' exhibit 36, pp. 4-5; Plaintiffs' exhibit 58, ¶ ¶ 14-16; Defendants' exhibit D, p. 9.

Defendants maintain that the Export Ban is consistent with the DOE's longstanding procedures, including its July 2023 decision, and is not a change that requires consideration of reliance interest.

First, Defendants argue that the Export Ban is not a final agency action, and even if it was, it clearly departs from DOE's past policies and practices. Next, Defendants argue that the Export Ban is a periodic component of the DOE's longstanding process for evaluating non-FTA export applications. Defendants state that the DOE previously commissioned two economic studies issued in 2012, to support the growing number of LNG export applications, and in the intervening years it has updated its economic studies twice—in 2015 and 2018. The DOE also issued underlying environmental studies to support its public interest determinations in 2014 and issued an update to its lifecycle analysis for greenhouse gas emissions in 2019. *Id.* at 32-33. Thus, Defendants argue that the Export Ban is consistent with its July 2023 Decision, which declined to promulgate rules to re-design its process for considering non-FTA export applications.

On the other hand, Plaintiff States maintain that the Export Ban is arbitrary and capricious under the APA because it (1) ignores the DOE's July 2023 Decision, (2) silently departs from decades of agency policies; and (3) is without reason.

Concerning the July 2023 Decision, Plaintiff States inform the Court that the DOE rejected a request to (1) approve no more applications for LNG exports to non-FTA countries "until it has completed final revisions of its policy guidelines;" (1) "[c]onduct a notice-and-comment process to develop natural gas export policy guidelines;" and (3) support the guidelines "with a thorough, careful economic study and . . . full

programmatic Environmental Impact Statement:[46] Here, the DOE has reached the opposite conclusion with the Export Ban, and without explanation or reasoning, despite having concluded just last year that there was no factual or legal basis to halt the approval of pending applications to export LNG to non-FTA countries.

Plaintiff States submit evidence that the DOE's normal practice has been to incorporate and develop new data through individual adjudicative proceedings,[47] and where large-scale studies are needed to conduct or update such studies, such has been accomplished without halting the statutory approval process.[48] So why the change of the past normal practice? And why now? While the Court agrees with Defendants that updating certain studies has been part of the process for obtaining information upon which the public interest determination is made, the decision to wholesale halt the process of approving applications for non-FTA countries is a complete reversal of how the DOE processed these applications in the past. The Court finds that the Plaintiff States have sufficiently plead their claim in Count IV that the DOE's decision is likely arbitrary, capricious, or otherwise unlawful. *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 192 (5th Cir. 2023). The Court will deny Defendants' Motion to Dismiss Count IV.

*iv. Count XII*

Count XII alleges that the LNG Export Ban violates the Congressional Review Act, 5 U.S.C. § § 801-808, which requires all rules to be submitted to Congress to allow it an opportunity to pass a resolution disapproving the rule. Plaintiff States maintain that

---

[46] Plaintiffs' exhibit 16, p. 9. (Quotations omitted).
[47] See Plaintiffs' exhibit 16, pp. 12-15, 26-27; Plaintiffs' exhibit 22, pp. 56-58; Plaintiffs' exhibit 37, p. 3.
[48] See e.g., Defendants' exhibit E, pp. 3-5.

24-30489.1398

the LNG Export Ban is a major rule and if so, the Government Accountability Office must provide a report and the effective date of the Rule must be delayed. 5 U.S.C. § 801.[49] Defendants argue that the Export Ban is not a rule, thus § 801 and the Congressional Review Act ("CRA") do not apply. The Court has already determined that the Export Ban is more than just part of the DOE's process for approving applications for export to non-FTA countries.[50] As such, the Court will deny Defendants' Motion to Dismiss Count XII.

   *v. Count XIV*

   Count XIV alleges that the Export Ban is unconstitutional grounded on the Separation of Powers and Foreign commerce Clause.  U.S. Const. art. I, § § 1, 8, cl. 3; 5 U.S.C. § 706. The Constitution vests Congress with "[a]ll legislative Powers," including the power "[t]o regulate Commerce with foreign Nations*,* and among the several States, and with the Indian Tribes." U.S. Const. art I, § § 1, 8, cl. 3. Plaintiff States maintain that a ban on LNG exports is a regulation of foreign commerce. Cf. *United States v. Baston*, 818 F.3d 651, 667 (11th Cir. 2016).

   Plaintiff States argue that Defendants cannot show that Plaintiff States' constitutional claims is invalid. Defendants contend that the Export Ban is consistent with the NGA and the DOE's statutory duty to "determine whether non-FTA exports would be inconsistent with the public interest." Plaintiffs States maintain that they have adequately plead that the DOE has unlawfully exercised power that belongs to Congress.

---

[49] § 801 identifies certain procedures an agency must follow to notify Congress of promulgated rules.
[50]  See discussion regarding Count III.

The Court considers the Export Ban as a rule that imposes a moratorium on considering export applications, which directly contravenes the express language of the NGA. Furthermore, as noted by Plaintiff States, by refusing to grant the LNG export applications, absent a finding that a particular export is not in the public interest, the DOE is subverting the public interest and Congress's determination that LNG exports are presumptively in the public interest. 15 U.S.C. § 717; *NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 669-70 (1976). Also, the Plaintiff States have submitted evidence that Congress has twice now rejected bans on LNG exports.[51] The Court finds that the Plaintiff States have adequately plead their constitutional claim and will deny Defendants' Motion to Dismiss Count XIV.

*vi. Counts XV and XVI*

Plaintiff States seek judicial review of President Biden's proclamation and the Defendants' actions that have halted the process to approve exports to non-FTA countries. Counts XV and XVI allege that President Biden's Proclamation and the DOE's actions concerning the Export Ban are *ultra vires*. Plaintiff States contend that the DOE and its officials' actions are outside the scope of their statutory authority and President Biden's proclamation violated the Constitution because he had no authority to make a directive to ban exports to non-FTA countries under the statute, of which the challenged action was taken, or any other statute. Plaintiff States cite *Ancient Coin Collectors Guild v. U.S. Customs & Border Protections,* 801 F.Supp. 2d 383, 406 (D. Md. 2011) (citing *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002)); see also

---

[51] See Plaintiffs' exhibits 34 and 35.

*Associated Builders & Contractors of Southeast Texas v. Rung*, 2016 WL 8188655, at *5
(E.D. Tex. Oct. 24, 2016) ("The [Department of Labor"], a federal agency also operating
within the Executive Branch, has implemented the President's Executive order by issuing
the Guidance incorporated by reference in the new Rule. Therefore, the Executive Order
may be challenged by Plaintiffs on both statutory and non-statutory grounds." (citing
*Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996)).

"Judicial review for *ultra vires* agency action rests on the longstanding principle
that if an agency action is unauthorized by the statute under which the agency assumes to
act, the agency has violated the law and the courts generally have jurisdiction to grant
relief. *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022)
(cleaned up). "This nonstatutory form of judicial review survived the enactment of the
APA." *Id.* Defendants maintain that *ultra vires* claims are confined to "extreme" agency
error or "blatantly lawless" agency action; "garden-variety errors of law or fact are not
enough." *Id.* at 765 (Citing *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 493-94 (D.C.
Cir. 1988)); *Oestereich v. Selective Serv. Sys. Loc. Board No. 11*, 393 U.S. 233, 238
(1968).

Defendants maintain that the Plaintiff States fail to allege or establish how the
Export Ban constitutes "extreme" agency error or "blatantly lawless" action to trigger
*ultra vires.* Defendants further maintain that the President's statement is consistent with
the DOE's goal to modernize its technical analyses and relies solely on the NGA's public
interest determination.

The Plaintiff States argue that Defendants' actions in issuing the Export Ban, which halted all pending and future applications to non-FTA countries meets the standard necessary for judicial review as it undermines the export approval process by the NGA and unlawfully advances Defendants' climate change policies. Moreover, the Plaintiff States contend that the Defendants' actions violate the NGA, are outside the scope of Defendants' statutory authority, and are *ultra vires* actions. The Plaintiff States argue that Defendants have cited no statutory authority to support a blanket ban on LNG exports. Again, the Plaintiff States have submitted evidence that Congress has twice now rejected bans on LNG exports.[52]

The Court does not consider Defendants' action to be a garden-variety error of fact or law.  Instead, the Court is more persuaded by the Plaintiff States' arguments that Defendants' actions were outside the scope of their authority and rooted in politics and Defendants' climate change policies.  The Court is persuaded that the DOE's choice to halt its process regarding LNG applications to non-FTA countries is an *ultra vires* action above and beyond its scope of authority.  The Court finds that the Plaintiff States have sufficiently plead their claims as to Counts XV and XVI, and therefore these claims survive Defendants' Motion to Dismiss.

---

[52] See Plaintiffs' exhibits 34 and 35.

## III. <u>PRELIMINARY INJUNCTIVE RELIEF</u>

The Plaintiff States move for a stay of the LNG Export Ban under 5 U.S.C. § 705,[53] or in the alternative, a preliminary injunction under Federal Rule of Civil Procedure 65.

"The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Indeed, a preliminary injunction "may only be awarded upon a clear showing" that: (1) Plaintiffs are likely to prevail on the merits; (2) Plaintiffs will suffer irreparable harm; (3) the equities tip in their favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). The Fifth Circuit has "cautioned repeatedly" that a preliminary injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four [*Winter*] requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (citation omitted); *see supra* at 3 (listing *Winter* factors). None of the *Winter* factors "have a fixed quantitative value; rather, a sliding scale is utilized to account for the intensity of each in a given calculus." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (cleaned up).

---

[53] § 705 **Relief pending review**

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

Considering the DOE's position that this Court has no jurisdiction for judicial review, and the Plaintiff States' Motion, which focuses entirely on a preliminary injunction, the Court will focus on the Plaintiff States' request for a preliminary injunction.

Courts should only issue a preliminary injunction to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The purpose of a preliminary injunction "is not to give a plaintiff the ultimate relief he seeks, but to preserve a court's power to render a meaningful decision after a trial on the merits." *Peters v. Davis*, 2018 WL 11463602, at *2 (E.D. Tex. Mar. 28, 2018) (citation omitted).

## A. The Plaintiff States' request for preliminary injunctive relief

The Plaintiff States move to stay or enjoin the LNG Export Ban because it is contrary to law and exceeds statutory authority. The Plaintiff States argue that the Export Ban violates the NGA, is unauthorized by statutory authority, or is an *ultra vires* action. See 5 U.S.C. § 706(2)(A), (C); *Apter v. HHS*, 80 F.4th 579, 587-88 (5th Cir. 2023). The Plaintiff States argue that the Administration and the DOE's LNG Export Ban directly contradicts, without explanation or logic, its reaffirmation of its LNG export approval process based on its longstanding policy and statutory interpretation.[54]

The Plaintiff States explain that on April 8, 2013, several environmental organizations submitted a "Petition for Rule Making Regarding Natural Gas Export Policy under the Administrative Procedure Act ("APA") to the DOE.[55] Petitioners asked the DOE "to promulgate new regulations or guidance defining the process by which it will consider applications to export liquefied natural gas." Specifically, Petitioners

---

[54] Plaintiffs' exhibit 16, p. 1.
[55] *Sierra Club*, *et al,* Petition for Rulemaking Regarding Natural Gas Export Policy (Apr. 8, 2013), https://www.energy.gov/sites/default/files/2023-07/04.0802013_Sierra%20Club%20Petition%20for%20Rulemaking%20Regarding%20Nat%20Export%20Policy_0.pdf.

requested that the DOE: grant no more licenses for LNG export to non-FTA nations until it completed a final revision of its policy guidelines; conduct a notice-and-comment process to develop new natural gas export policy guidelines; and to support the development of those guidelines with a "thorough, careful, economic study and ... a full programmatic Environmental Impact Statement."[56]

On July 18, 2023, the DOE issued an "Order Denying Petition for Rule Making on Exports of Liquefied Natural Gas"[57] which expressly denied the Petition by the environmental groups.[58] The DOE articulated that it had reasonably exercised its discretion to implement its LNG export program through a combined approach of individual adjudications and export-focused regulatory actions, as opposed to a single rulemaking of broad applicability. Additionally, the DOE expressed that it had, in fact, "established a decision-making process under the Natural Gas Act ("NGA") § 3(a) that 'respond[s] to the complex issues raised by LNG exports and appropriately serve[s] the Natural Gas Act.'"[59] Finally, the denial stated that the DOE finds that "its adjudicatory approach to non-FTA applications allows it to maintain important flexibility to consider *developing facts* and circumstances in the U.S. and global LNG export markets, as well as *evolving considerations related to the environment, global energy security, and other*

---

[56] *Id.* at 9.
[57] Plaintiffs' exhibit 16.
[58] Sierra Club, Center for Biological Diversity, Delaware Riverkeeper Network, Friends of the Earth, and Environment America.
[59] *Id.* p. 4.

24-30489.1405

*matters bearing on the public interest*."[60] The DOE concluded that there was no factual or legal basis to halt approval of LNG exports pending a final revision of policy.[61]

The Plaintiff States remark that the DOE's reversal of its July 2023 Decision is without logic, reason or explanation, directly contradicts it prior decisions and longstanding process with regard to the approval of applications to export liquefied natural gas for non-FTA nations. The Plaintiff States suggests that the DOE's reverse-stance and the President's announcement is politically motivated. The Plaintiff States complain that Defendants have published nothing in the Federal Register that explains, justifies, or relates to its LNG Export Ban, no rulemaking docket has been opened, nor called for public comment, and there is no end date set on the Export Ban.

The Defendants' choice to halt permits to export natural gas to foreign companies is quite complexing to this Court. Defendants remark that the purpose is to update its information as to how these exports to non-FTA countries might affect the economy and inherently consumers of natural gas here in the United States, and the effect on the environment. However, the DOE has made updates to its studies on several occasions without the President making an announcement of an unprecedented climate change action, and without the DOE declaring a wholesale "pause" on pending current and future applications of exports to non-FTA countries.[62] Considering that the DOE will be allowing a 60-day comment period through an announcement in the Federal Register, *after they update their studies—which have already been updated,* this Court is

---

[60] *Id.* (emphasis added)
[61] *Id.*
[62] Transcript of June 20, 2024, hearing, p. 5; Plaintiffs' exhibit 22, pp. 56-57, Doc. 13-24.

24-30489.1406

concerned that the DOE's actions are no more than a back-door scheme to circumvent the APA. This also appears to be a breach of the Constitution's separation of powers between the legislative and executive branch.

Concerning the environment, it is undisputed that natural gas is cleaner than coal. According to the U.S. Energy Information Administration ("EIA"), burning natural gas for power emits fewer greenhouse gas emissions and pollutants than other fossil fuels.[63] Never mind that it would be virtually impossible to gather accurate environmental data from foreign non-FTA countries, lower natural gas prices have reduced actual and projected future use of coal relative to the use of natural gas to generate electricity.[64] Studies have shown that "[i]ncreased U.S. natural gas exports have and will continue to create massive economic benefits for U.S. communities while providing global access to the reliable U.S. natural gas supply needed to further the global energy transition from higher greenhouse gas (GHG) emitting fuels to lower-GHG emitting natural gas.[65] Additionally, "[a]ccess to U.S. natural gas also allows other countries to accelerate their transition away from coal, ..."[66]

Studies have shown that LNG exports were projected to have positive economic effects on the U.S. economy.[67] "Despite total U.S. natural gas consumption almost doubling from 2010 to 2023, the 2023 average natural gas price of $2.54 per MMBtu[68]

---

[63] Plaintiffs' exhibit 7, pp. 8-9.
[64] Plaintiffs' exhibit 7, p. 7, Doc. 13-12
[65] Plaintiffs' exhibit 11, ¶ 6. Doc. 13-14.
[66] *Id.* p. 6.
[67] *Id.* Additionally, an LNG export sector (natural gas exports are sold at higher prices than domestic sales) drives down prices in the domestic market and incentivizes upstream gas producers to continue to drill and produce natural gas.
[68] MMBtu is an acronym for Metric Million British Thermal Unit.

was the second lowest level in over 35 years, . .”[69] Also of interest, “U.S. gas trading [in 2023] at $2.55 per million British thermal unit (mmBtu) . . . in Louisiana,” whereas it traded at “$9.81 per mmBtu . . . in Europe” and $11.52 mmBtu . . . in Asia.”[70] It does not require a mathematical genius to determine that exports of natural gas pay five times more than the sale of natural gas domestically. Consequently, exporting natural gas is economically beneficial to the United States.

The Court has reviewed the voluminous studies attached as exhibits, all of which boast of both the economic and environmental benefits of exporting natural gas.  It appears that the DOE’s decision to halt the permit approval process for entities to export LNG to non-FTA countries is completely without reason or logic and is perhaps the epiphany of ideocracy.

The Plaintiff States contend that § 3 of the NGA obligates the DOE to review LNG export applications and approve them unless it finds the proposed exports are inconsistent with the public interest. 15 U.S.C. § 717b(a) provides, in pertinent part, that “[t]he Commission shall issue such order upon application, unless, after opportunity for hearing, [the DOE] finds that the proposed exportation or importation will not be consistent with the public interest.” See *W.V. Pub. Servs. Comm’n v. U.S. Dept. of Energy*, 681 F.2d 847, 856 (D.C. Cir. (06/18/1982) (this text creates “a general presumption favoring . . . authorization” of exports and imports). Section 3 of the NGA requires an affirmative showing of inconsistency with the public interest to deny an

---

[69] Plaintiffs’ exhibit 11. p. 4, Doc. 13-14.
[70] Plaintiffs’ exhibit 55, p. 3, *US was top LNG exporter in 2023 as hit record levels,* Reuters, January 3, 2024, Doc. 63.4.

application. *Panhandle Producers and Royalty Owners Ass'n v. Economic Regulatory Admin.*, 822 F.2d 1105 (D.C. Cir. 06/30/1987). As such, the Plaintiff States maintain that the Export Ban contravenes § 717b(a)'s unambiguous language, therefore, the DOE must consider and grant an export application unless "inconsistency with the public interest" is affirmatively shown.

The Plaintiff States further note that § 717b(a)'s focus on "the proposed exportation" indicates that the DOE must review individual applications as opposed to a blanket moratorium, as done here. Similarly, the Plaintiff States remark that the provision's requirement that the DOE act "upon application" confirms that it lacks authority to indefinitely halt consideration and approval of all export applications. See *Ingalls Shipbuilding*, 17 F.3d at 133, (concluding that an agency has no discretion to delay ordering a hearing where the statute provides that the agency "upon application of any interested party shall order a hearing").

To buttress its position, Plaintiff States point to other provisions of the statute, specifically, 15 U.S.C. § 717n(c)(1)(A), which dictates "expeditious completion of all such proceedings." The Plaintiff States argue that this language places the DOE "under a duty to act by either granting or denying a permits" and does not allow it to stop export authorizations "indefinitely." Summarizing, the Plaintiff States posit that it is likely to succeed on the merits of their claim that the Export Ban is irreconcilable with the NGA.

Next, the Plaintiff States maintain that the Export Ban is not authorized by law because the DOE cites no authority for imposing a blanket ban on LNG exports. See *FEC v. Cruz*, 596 U.S. 289, 301 (2022) (agencies have "'no power to act' . . . unless and until

Congress authorizes it to do so by statute.") Additionally, the Plaintiff States rely upon the major questions doctrine because of the Export Ban's economic significance. The Plaintiff States inform the Court that the Export Ban disrupts the natural gas market, puts over $181 billion in energy-manufacturing investment at risk, threatens billions in GDP growth, and has a detrimental ripple effect throughout the economy and society.[71] The Plaintiff States contend that this places the Export Ban well within the impacts the court has found to satisfy the major questions doctrine, see, e.g., *Alabama Ass'n of Realtors v. HHS*, 141 S.Ct. 2485, 2489 (2021), and also reflects an "unheralded," "novel," and "unprecedented" interpretation of the statute. See *West Virginia v. EPA*, 597 U.S. 697, 716, 724, 729 (2022).

Additionally, the Plaintiff States maintain that the Export Ban requires a notice-and-comment procedure as required by the APA. The Plaintiff States allege that the Export Ban violates the APA's procedural requirement to "subject their substantive rules to notice and comment," without which, the rules "may not be enforced." *W&T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237 (5th Cir. 2019) (citing 5 U.S.C. § 553). The Plaintiff States further contend that the Export Ban is a substantive rule, relying on 5 U.S.C. § 551(4). Rules are "agency statement[s] of general or particular applicability" that are "designed to implement . . . or prescribe law or policy" or describe the "organization, procedure, or practice requirements of an agency," and substantive rules are those that "impose[] any rights and obligations" and have a "binding effect on agency discretion or

---

[71] Plaintiffs' exhibit 5, pp. 6-18; Plaintiffs' exhibit 18, pp. 66-69; Plaintiffs' exhibit 33, pp. 23-24.

severely restrict[] it," *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (quotations omitted), *aff'd by equally divided court*, 579 U.S.547 (2016)).

The Plaintiff States argue that the Export Ban imposes a moratorium on considering export applications, which immediately alters the right to receive an order on an export application "unless the [DOE] finds that it is not consistent with the public interest." *Cia Mexicana De Gas, S.A. v. Federal Power Comm'n*, 167 F.2d 804 (5th Cir. 1948); see *Phillips Petro. Co. v. Johnson*, 22 F.3d 616, 619-20 (06/10/1994) (an action that "effects a change in the method used" is "a new rule and cannot be interpretive"); *id.* at 620, ("An announcement stating a change in the method . . . is not a 'general statement of policy.'") *id.* Thus, the Plaintiff States maintain that the Export Ban is invalid because it is a new substantive rule for APA purposes and was not submitted for notice and comment, see *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 626 (5th Cir. 2001), noting that the DOE has further failed to invoke the "good cause" exception. *U.S. v. Cain*, 483 F.3d 408, 420 (6th Cir. 10/13/2009) (there is a heavy burden to the good cause exception to the notice and comment requirement, and the exception is "narrowly construed and only reluctantly countenanced," citing *Util. Solid Waste Activities Group v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001) (quoting *Tenn. Gas Pipeline Co. v. FERC*, 969 F.2d 1141, 1144 (D.C. Cir. 1992)).

The Plaintiff States also argue that the Export Ban is arbitrary and capricious under the APA because it ignores the DOE's July 2023 Decision, silently departs from decades of agency policies, and is without reason. The Plaintiff States argue that the Export Ban *sub silentio* makes multiple changes to longstanding DOC policies by

deciding to categorically ban new LNG exports until it revises its public-interest calculation.

Additionally, the Plaintiff States remark that the Export Ban completely changes and/or reverses its July 2023, decision and does so without acknowledging the old policy, and explaining the new one. See *Wages & White Lion Invest. L.L.C. v. FDA*, 90 F.4th 357, 381-82 (5th Cir. 2024) (en banc). As such, the Export Ban violates the "change-in-position doctrine." *Id.* at 381. When an agency "depart[s] from a prior policy *sub silentio*," its action is arbitrary and capricious. *Louisiana v. United States Department of Energy*, 90 F.4th 461, 469 (5th Cir. 01/08/2024); *Encino Motorcars, L.L.C. v. Navarro*, 579 U.S. 211, 224 (2016) ("[A] lack of reasoned explication for a regulation that is inconsistent with the Department's longstanding earlier position results in a rule that cannot carry the force of law."). The Plaintiff States allege that the Export Ban *sub silentio* makes multiple changes to longstanding DOC policies by deciding to categorically ban new LNG exports until it revises its public-interest calculation.

The Plaintiff States give several examples as to how the DOE has changed its position: (1) the DOE has a longstanding policy of determining whether to authorize exports on a case-by-case basis; (2) the Export Ban departs from the policy of presuming that export applications will be granted because exports are in the public interest;[72] (3) the Export Ban conflicts with the longstanding policy embodied in the 1984 Policy Guidance and elsewhere, that the DOE should minimize federal involvement and promote free trade because the market is usually the most efficient at allocating gas

---

[72] See Plaintiffs' exhibit 22, p. 26.

supplies; and (4) banning new exports to conduct more environmental analysis departs from the Department's recognition that § 717b(a) is not the proper mechanism to address environmental review conducted by FERC, and the DOE's commissioning of environmental studies while continuing to process applications.[73]

The Plaintiff States posit that the Export Ban is an arbitrary and capricious action under the APA and is not the product of reasoned decisionmaking because it does not mention, nor consider the Ban's impact on GDP, jobs, tax revenues and royalties, investor confidence, state and local communities, or reliance interests. The Plaintiff States highlight the fact that for decades, the DOE has made specific factual findings that LNG exports are in the public interest based on an evaluation of economic, energy security, environmental, national security, and international relationship considerations. The Plaintiff States complain that the Export Ban does not discuss the NGA that governs LNG export decisions or provide any explanation as to why the halt is permissible.

### i. Standing

Based on the Court's previous analysis as to Defendants' Motion to Dismiss, the Court finds that the Plaintiff States have established standing to assert their claims with regard to the Preliminary Injunction.

### ii. Irreparable harm

"A showing of irreparable harm requires a demonstration of harm for which there is no adequate remedy at law." *Louisiana*, 55 4th 1017, 1033-34 (Dec. 19,022) (quotations omitted) (quoting *Daniels Health Scis., L.L.C v. Vascular Health Scis., LLC,*

---

[73] See Plaintiffs' exhibits 23, pp. 86-94 and 38; *Sierra Club*, 867 F.3d at 197-99.

710 F.3d 579 585 (5th Cir. 2013)); see also *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies"). To show irreparable harm, a plaintiff must demonstrate that they will suffer an injury that is "both certain and great; it must be actual and not theoretical." *Wis. Gas Co.*, 758 F.2d at 674. Such harm "must be of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C.), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976) (quotations omitted).

Plaintiff States maintain that they will likely suffer irreparable harm in the absence of preliminary relief due to the financial harm resulting from the Export Ban. Financial harm is irreparable where federal agencies "enjoy sovereign immunity for any monetary damages" and plaintiffs lack "a guarantee of eventual recovery." *Wages & White Lion,* 16 F.4th 1130, 1142 (5th Cir. 2021). Plaintiff States maintain that it will suffer irreparable financial harm because they will collect less severance taxes and earn less royalties,[74] rents and related payments than they would otherwise, and as such they will not likely be able to recover.

Plaintiff States submit evidence that Texas, along with other Plaintiff States will suffer irreparable harm due to loss tax revenues and canceled projects,[75] specifically

---

[74] Plaintiffs' exhibits 41 and 46.
[75] Plaintiffs' exhibit 1, p.1 (World Oil, March 28, 2024, "Biden administration's pause on new licenses for liquefied natural gas (LNG) exporters is already stalling progress for projects that were aiming to come online later this decade"), Doc. 13-4; Plaintiff's exhibit 40, Americas, LNG Terminal, February 29, 2024, ("Commonwealth LNG has postponed a final investment decision on its 9.3 mtpa LNG facility in Cameron, Louisiana", specifically and expressly attributing the postponement to the DOE pause in permit reviews.)

noting canceled projects, postponed investment decisions and a loss of specific tax revenues, as well as a disruption in the production of natural gas.

Additionally, Plaintiff States point out that the DOE has rejected attempts to challenge the Export Ban through § 717r, thus a challenge as to whether the Export Ban is lawful will be a moot question in any future challenge to a particular decision granting or denying an export application after the Export Ban is lifted. Also, Plaintiff States assert that because the Export Ban is causing a "here and now" injury by unlawfully banning consideration of export applications and imposing irreparable harm that will be impossible to remedy at some future point when Defendants may terminate the Export Ban, issue particular export orders, and appellate review of those orders would be possible under § 717r.

Next, Plaintiff States argue that they are suffering irreparable harm or at least an aggravation of their irreparable injury, due to the deprivation of their procedural right to participate in the APA's notice-and-comment process. See *Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, 617 F.Supp.3d 478, 499 (W.D. La. 2022); see *Texas v. Becerra*, 577 F.Supp.3d 527, 560 (N.D. Tex. 2021) (similar), *cf. VanDerStok v. Garland*, 633 F.Supp.3d 847, 858 (N.D. Tex. 2022) (finding that, while "obligatory compliance with a 'likely unlawful' regulation during the course of litigation" is insufficient "to comprise irreparable harm on its own," it "aggravate[s]" the plaintiffs' fear of prosecution, and concluding that plaintiffs showed "a substantial threat of irreparable harm.").

Plaintiff States also contend that the Export Ban results in irreparable harm by causing reduced energy security and institutional injury. Plaintiff States remark that reduced production of natural gas, along with the reduced investment and infrastructure, threatens Plaintiff States' ability to access reliable energy. [76]

Defendants argue that Plaintiff States cannot claim that the Export Ban will directly cause irreparable harm because the alleged injuries are of the seven applicants whose applications have been delayed. Thus, they have a higher burden to show injury. *Lujan*, 504 U.S. at 562. Again, Defendants suggest that the Plaintiff States do not claim specific tax revenue losses, but rather only projections of potential tax revenue losses over a period of years. Defendants argue that such possible losses are inherently speculative and predicated upon a series of unfounded assumptions.

Regarding Plaintiff States' asserted harm of "reduced energy security," Defendants contend that this asserted harm is neither certain nor imminent. Specifically, Defendants remark that the Plaintiff States do not show how the Export Ban harms domestic energy security or domestic energy supplies.

Next, Defendants argue that the Export Ban is not a rulemaking per 5 U.S.C. § 551(5) but is instead a component of the informal adjudication process that the DOE will use to make public interest determinations on pending non-FTA export applications. Defendants suggest that any harm to Plaintiff States can be remedied by a remand ordering the DOE to allow notice-and-comment. Thus, Defendants allege that Plaintiff

---

[76] See Plaintiffs' exhibit 51; Plaintiffs' exhibit 5, pp. 4-9, 11-16.

24-30489.1416

States fail to establish that an injunction is necessary to avoid irreparable harm under the second *Winter* factor.

The Fifth Circuit has recognized that "it is not necessary to demonstrate that harm is inevitable and irreparable," but a plaintiff "need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Avram A. Jacobson, M.D., P. A.*, 804 F.2d 1390, 1394 (5th Cir. 1986). Here, the Court is convinced that the Export Ban will and is irreparably harming the Plaintiff States. Plaintiff States have submitted evidence of harm specifically to Louisiana, Texas, and West Virginia in the loss of revenues, market share, and deprivation of a procedural right. The Court finds that Plaintiff States have sufficiently alleged irreparable harm that cannot be remedied without an injunction. *Biden v. Missouri*, 142 S.Ct. 647 (2022) (There need be only one plaintiff with standing to satisfy requirements of Article III, U.S. Const. art. 3 § 2, cl. 1); *Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024).

*iii. Equities and public interest*

Defendants contend that Plaintiff States fail to satisfy the third and fourth *Winter* factors because the equities and the public interest tip in DOE's favor. When the government is a party, the analyses of the public interest and balance of equities merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the Court must balance the competing claim of injury and consider the effect on each party by granting or withholding the requested relief. *Winter*, 555 U.S. at 24. (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)).

Defendants remark that Plaintiff States complain of the one-year delay in the investments in the LNG projects, and the associated tax and/or royalty revenues they would receive. Defendants argue that should the injunction be granted, the DOE would proceed with public interest determinations before the conclusion of the Export Ban/Pause, forcing it to make uninformed public interest determinations that would likely result in additional, prolonged litigation, and create significantly longer delays for applicants than the Update itself. Defendants claim this would frustrate the Executive Branch's ability to function by allowing parties to challenge every step of the administrative process no matter how large or small, substantive or procedural.

This argument does not excuse Defendants' unlawful action. Thus, Defendants' contention that the NGA statutorily mandates a public interest determination and requires the DOE to study and consider how potential export authorization will affect the economy considering that since DOE has not updated its economic analysis since 2018, contradicts arguments of Defendant's counsel at oral arguments on June 20, 2024, where counsel admitted that the three (3) reports/studies used as part of the public interest analysis are continually updated.

Plaintiff States contend that a § 705 stay or injunction of the Export Ban would be in the public's interest and not harm Defendants but would cause significant harm to the Nation, as discussed herein. Plaintiff States point to a 2018 study commissioned by the DOE, which determined that "if the ***market*** is allowed to determine exports, changes in global markets that bring forth increased LNG exports will also lead to an increase in overall economic activity leading to higher GDP," and the "U.S. consumer well-being

increases with rising LNG exports."[77] Specifically, the study concluded that "[i]ncreased exports of natural gas will improve the U.S. balance of trade and result in a wealth transfer into the U.S."[78] Notably, the study found that there is "no support for the concern that LNG exports would come at the expense of domestic natural gas consumption."[79]

The Court agrees with the Plaintiff States that the equities and public interest favor the Plaintiff States.

### iv. Likelihood of success on the merits

To show a likelihood of success on the merits, the Plaintiff States must "present a prima facie case, but need not show it is certain to win." *Janvey v.* Alguire, 585, 595-96 (5th Cir. 2011). The Plaintiff States make the following arguments as to why they are likely to succeed on the merits of their claims: (1) the LNG Export Ban is contrary to law and exceeds statutory authority; (2) the LNG Export Ban violates § 3 of the NGA, 15 U.S.C. § 717(a); (3) The LNG Export Ban is not authorized by law; (4) the LNG Export Ban violates the APA's Procedural requirements (notice-and-comment); and (5) the LNG Export Ban is arbitrary and capricious under the APA.

The Court has addressed the merits of Counts I-IV, XII, and XIV-XVI and incorporates those discussion and determinations here concerning Plaintiff States likelihood of success on the merits as to those Counts. For the reasons explained as to Counts I – IV, XII and XIV-XVI above the Court finds that Plaintiff States are likely to succeed on the merits as to these Counts. As such, the Court now considers Plaintiff

---

[77] Plaintiffs' exhibit 18, pp. 65-68 (emphasis added).
[78] *Id.* p. 64.
[79] *Id.*

States' likelihood of success on the merits on Counts V, VI, VII, VIII, IX, X, XI and XIII.

*a. Counts V and VI, VII, VIII, IX, X and XI*

Counts V and VI, VII, VIII, IX, X, and XI, allege that the Export Ban is arbitrary and capricious because it is (1) unreasoned, (2) an unexplained departure from longstanding policy, (3) fails to consider important aspects of the problem, (4) fails to consider alternatives within previous policy, (5) fails to consider reliance interests, (6) fails to conduct cost/benefit analysis, and (7) is a pretext with conflicting explanations. 5 U.S.C. § 706.

Counts V, VII, and X allege that the LNG Export Ban is arbitrary capricious because it is without reason, it fails to consider important aspects of the problem, and fails to conduct cost/benefit analysis. 5 U.S.C. § 706.[80]

Plaintiff States complain that Defendants have provided no reasoning whatsoever for the LNG Export Ban, and considering that for decades the DOE has made specific factual findings regarding the public interest determination while continuing the approval process, Defendants fail to explain why a halt of the approval process is now necessary.

Defendants maintain that the purpose of updating its information concerning its public interest determination is based on the exponential growth of the LNG market. Thus, the "Update" is necessary to make sure the DOE is making decisions based on current economic and environmental realities—not the situation as it existed in 2018 or

---

[80] At the hearing on June 20, 2024, counsel for Defendant informed the Court that Plaintiff States failed to address Counts VII through XVI as to the preliminary injunctive relief, therefore Defendants suggest that Plaintiff States have waived any arguments as to these claims. Transcript, pp. 42-43, June 20, 2024.The Court will address the arguments that are set forth in the numerous and voluminous briefs filed by the parties.

2019.  While this may explain the need for updated studies, it does not explain why the Export Ban is necessary to make those updates.

Defendants state that it is not "legally required to justify [its] judgment with a cost-benefit analysis," but that it did weigh the costs and benefit analysis, concluding that the update and the attendant Export Ban presented no risk to the current and near-to-medium-term global supply of LNG.[81] The DOE insists that it also considered the benefit of an Update in providing information it will use to mitigate the risks of higher domestic energy prices and potential impacts to energy security and the environment.[82] Finally, Defendants contend that the DOE's decision was compelled by statute and its statutory duty regardless of any costs that may result from a delay in final decisions. Citing *Painsolvers Inc. v. States Farm Mut. Auto. Ins. Co.*, 685 F.Supp. 2d 1123, 1139-40 D.Haw. 2010).

Plaintiff States argue that the DOE has failed to consider the impact on national security, state revenues, employment opportunities, funding for schools and charities, and pollution allegedly caused by increased reliance on foreign energy sources.  Plaintiff States complain that the DOE has failed to consider numerous other important aspects of the problem and these failures are just another reason why the Export Ban is arbitrary and capricious under the APA. *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.* 60 F.4th 956, 973 (5th Cir. 2023) (cleaned up). Additionally, "'[s]tating that a factor was considered . . . is not a substitute for considering it.'" *Louisiana v. United States Department of Energy*,

---

[81] DOE Announcement at 1.
[82] *Id.* at 2.

90 F.4th 461, 469 (5th Cir. 01/08/2024). The agency must instead provide more than "conclusory statements" to prove it considered the relevant statutory factors. *Id*. ("We have previously held that 'conclusory statements'—like [the DOE's]—do not constitute adequate agency consideration of an important aspect of a problem."); see also *Encino Motor-cars, L.L.C. v. Navarro*, 579 U.S. 211, 224 (2016). "the Supreme Court has repeatedly reaffirmed this prohibition on 'convenient litigating position[s]' and 'post hoc rationalization[s].'" *Louisiana*, 90 F. 4th at 469 (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

Here, it appears that the DOE has failed to provide a more detailed justification for its halt of the approval process to conduct an update, especially considering that past precedent, which the applicants relied upon, allowed the approval of the applications to proceed when updates were made. Also, it appears to this Court that Defendants did not realistically consider the cost/benefit analysis with regard to Plaintiff States' concerns about the impact on national security, state revenues, employment opportunities, funding for schools and charities, and pollution allegedly caused by increased reliance on foreign energy sources. Considering all, the Court finds that Plaintiff States have a likelihood of success on the merits as to the claims.

Count XI alleges that the LNG Export Ban is arbitrary and capricious because of pretext and conflicting explanations. 5 U.S.C. § 706. Plaintiff States complain that the opaque and rushed nature of the Export Ban, and its irreconcilable conflict with the July 2023 Decision's administrative record, fatally undermines the integrity of the decisionmaking process. Plaintiff States reiterate that the Export Ban is a complete

reversal of its July 2023 Decision, without explanation or reason and thus is politically motivated. Again, as discussed herein, this Court is somewhat confused as to Defendant's decision to halt the approval process considering its July 2023 Decision and past history on how it handled updates and the approval process, as well as the NGA's express language that applications are to be processed expeditiously. The Court finds that Plaintiff States have a likelihood of success on the merits as to this claim.

### b. Count XIII

Count XIII alleges that the LNG Export Ban unreasonably delays agency action. 5 U.S.C. § 706(1). Defendants maintain that the Export Ban doesn't unreasonably delay the DOE's approval of pending or future export applications. Section 706(1) "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act," or to 'take action upon a matter, without directing how it shall act.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004). Plaintiff States challenged Defendants' contention that the delay caused by the Export Ban was reasonable, by arguing that this argument goes to the merits about the nature of the Ban.[83] As such, the Court will only address Count XIII when that issue arises as to the merit of the claim.

## IV. CONCLUSION

For the reasons explained herein, the Court finds that the Plaintiff States have standing to assert their claims in this action and as to the preliminary injunction. Based on the Plaintiff States' concession and the law, the Court finds that Counts I-XI, XIII, and XIV against the President should be dismissed, otherwise, Defendants' Motion to

---

[83] Plaintiffs' Opposition, p. 35. Doc. 63.

Dismiss will be denied. As to the Motion for Preliminary Injunction, the Court finds that

the Plaintiff States are entitled to the Injunctive Relief requested as to the LNG Export

Ban. Accordingly, the Court will grant Plaintiffs' Motion for Preliminary Injunction, and

order that the LNG Export Ban be stayed in its entirety, effective immediately.

**THUS DONE AND SIGNED** in Chambers on this 1st day of July, 2024.

_____

**JAMES D. CAIN, JR.**

**UNITED STATES DISTRICT JUDGE**

Tab 5

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.


s/ *Arielle Mourrain Jeffries*
ARIELLE MOURRAIN JEFFRIES